## Elkhorn Coal Corporation v. Kerr.

(Decided June 17, 1924.)

### Appeal from Floyd Circuit Court.

1. Master and Servant—Injury by Breathing Impure Air in Mine Not Compensable.—Injury resulting from breathing impure air and

poisonous gases in a mine is not one compensable under Workmen's Compensation Act (Ky. Stats., section 4880).

2.   Damages—Whether Injury Resulted from Mine Owner's Negligence in Failing to Furnish Air Held for Jury.—Whether miner's capacity was impaired by defendant's negligence in not properly ventilating place of work, resulting in illness complained of, held for jury.

O'REAR, FOWLER & WALLACE, J. WOODFORD HOWARD, E. W. PENDLETON and SMITH & COMBS for appellant.

C. B. WHEELER for appellee.

OPINION OF THE COURT BY SANDIDGE, COMMISSIONER—Affirming.

Appellee, James Kerr, sued appellant, Elkhorn Coal Corporation, to recover $3,000.00 damages for injuries received by him while an employee of it, engaged in loading coal in one of its coal mines. He claimed by his petition that while so at work he was seriously and permanently injured by breathing foul and impure air and poisonous and noxious gases which appellant had negligently permitted to accumulate and remain in its mine. Appellant denied the negligence charged, and by a second paragraph pleaded that its mine was skillfully operated and equipped with appliances for ventilation in strict compliance with the statutes applicable thereto, and that the injury, of which appellee complained, was merely one of the ordinary risks incident to and which he assumed when he accepted the employment. By a third paragraph it pleaded that it was operating under the provisions of the workmen's compensation law of Kentucky; that the plaintiff had accepted its provisions when he entered their employ; and that these facts barred appellee's right to recover in an action at law. Appellee demurred to the second and third paragraphs of appellant's answer and, without waiving it, by reply traversed their averments, and pleaded affirmatively that his injury was not within the purview of the Workmen's Compensation Act. By an amended answer, appellant pleaded that appellee's injury was caused by his own contributory negligence. An agreed order was entered controverting of record the affirmative allegations of the amended answer and reply. The court below sustained the demurrer to the third paragraph of appellant's answer. The jury awarded appellee a verdict of $750.00, on which the court duly entered judgment, and appellant's motion and grounds for a new trial having been overruled, it prosecutes this appeal.

Appellant urges as grounds for reversal the action of the court below in sustaining the demurrer to the paragraph of its answer pleading the provisions of the Workmen's Compensation Act in bar of appellee's right to recover and the failure of the court below to peremptorily instruct the jury to find for it at the conclusion of the evidence, upon the theory that the injury sued for herein is one compensable under that act. Appellant cites and quotes from opinions of the courts of last resort of a number of other states which seem to sustain its contention. However, we find that the workmen's compensation laws of the various states differ in their provisions and phraseology, and the decision of such questions always turns upon a construction of the peculiar phraseology of the act in question. The particular question presented as to whether or not an injury resulting from breathing foul and impure air and poisonous and noxious gases comes within the purview of the Kentucky Workmen's Compensation Act and is compensable under it has heretofore been presented to and determined by this court. It will be observed that by section 4880, Kentucky Statutes, the Kentucky workmen's compensation law affects the liability of the employer only for personal "injuries" sustained "by accident" arising out of and in the course of employe's employment, and expressly excludes diseases except such as are "the natural and direct result of a traumatic injury by accident." Construing the statute, in Jellico Coal Company v. Adkins, 197 Ky. 684, we said:

"It will be observed that all of these definitions of 'trauma' and 'traumatic' imply the presence of physical force, and this is the generally accepted meaning of the word. Evidently the act implies that some external physical force actually directed against the body must occur in order to constitute traumatic injury by accident."

And:

"We, therefore, conclude that diseases of an employe, contracted in the course of his employment and arising out of it, occasioned by negligence of the employer and not caused by traumatic injury are not compensable under the act, but that for such diseases he may have an action at common law. Further, that as the board of compensation had no jur-

isdiction of the claim, a proceeding in that tribunal did not bar an action at law, and the court did not err in so holding.''

We may add with reference to the facts of that case that the injury complained of was one resulting from breathing impure air and poisonous gases in a mine. In the light of the construction placed upon the Kentucky Workmen's Compensation Act, in the case above, the position of appellant is not well taken that the injury sued for herein is one compensable under it and that, therefore, the court below erred in not awarding it a peremptory at the conclusion of the evidence. On the other hand, the court properly sustained the demurrer to that paragraph of appellant's answer and properly overruled its motion for a peremptory.

Appellant takes the position that the verdict is flagrantly against the evidence, because it establishes that appellee's earning capacity has not been impaired; that the mine was properly ventilated at appellee's place of work; and that his illness was but a recurrence of a chronic bronchitis or mine asthma, and not the result of its negligence. Appellee testified positively that as a result of the injury received by him from breathing the foul air and poisonous gases in the mine he has been permanently injured and that since the injury he has not been able to work exceeding half a day at a time. Dr. W. M. Wickers, mine physician for appellant, on cross-examination, admitted that permanent injury might result to a person breathing impure air and noxious gases in a mine by injuring the lining of the lungs, the mucous membrane, and poisoning the system. Dr. Sturgill, appellant's assistant mine physician, would not commit himself on the question as to whether or not breathing impure air and noxious gases in a mine might result in permanent injury to a person. Neither of these doctors —and they both had treated appellee, the former previously and the latter on the occasion in question, and were both introduced as witnesses by appellant—testified as to whether or not appellee's condition, following his collapse in appellant's mine, would or did result in permanent injury to him. It appears from the testimony that appellee collapsed in appellant's mine in January, 1920, about ten o'clock in the morning. He was carried out of the mine on one of the coal cars and from the mouth of the mine it seems he walked to his home.

He testified that from August, 1919, to the date of his injury, the air in the mine where he was working had been bad; that he had repeatedly complained about it to the assistant mine foreman; that on the morning he collapsed the air was so "tight," as he expressed it, that his breath would not leave his face; that the smoke and fumes from the explosives used in shooting down the coal, and other poisons, had not been driven out by the ventilating system; and that this condition existed because the "break throughs" and openings behind him had not been bratticed. He testified to a most distressing and painful condition that befell him as a result of breathing the impure air and noxious gases in the mine on the morning in question; that his pain and suffering lasted for several days; that he was "knocked out" and could not work at all for a period of about thirty days; and that he had never since been able to work exceeding half of a day at a time. His testimony as to the air where he was working being bad was corroborated by that of some two or three other witnesses, while appellant introduced as many or more witnesses who testified that the air was good and contained no impurities or gases at the point where he was working when he claimed to have been injured. Only two witnesses introduced—one of them for appellant and the other for appellee—testified as to how close to the point where appellee was working the openings had been bratticed, and both fixed the distance at approximately 200 feet, and one of them testified that there were openings or "break throughs" between the brattices and the point where appellee was working. Appellee and two or three other witnesses testified as to the faulty bratticing of the openings where appellee was at work.

It is true that the evidence established that appellee made nearly twice as much money in the year 1920, after receiving the injury complained of, as he did in any of the three previous years. But it is also true that in 1920 the evidence disclosed that appellee received more money for the same character of work and the mines were in operation a much greater part of the time than they were in the previous years. Appellee testified that in making what he did in the year 1920 he was not able to work exceeding half of a day at any time. His testimony that he was unable to work more than half of any day was not contradicted by any witness.

Dr. Sturgill, the assistant mine physician, testified that on the occasion in question, as he diagnosed the case, appellee was suffering merely from an attack of mine asthma. Dr. Wickers, who does not appear to have treated appellee on the occasion in question but who was mine physician for appellant, testified that he had previously treated appellee for asthma or bronchitis. Some three or four witnesses testified for appellant that appellee previously had complained of asthma or mine asthma. Appellee testified that his injury was not the result of mine asthma but was caused by breathing the impure air and noxious gases in the mine where he was working. The testimony as to the existence or nonexistence of impure air and poisonous gases in the mine has heretofore been indicated. Dr. Sturgill did not testify that the condition in which he found appellee on the occasion in question could not have been produced from breathing impure air and noxious gases. He merely stated that ''as he diagnosed the case'' it was asthma. Under this state of facts it was clearly a question for the jury to determine whether or not appellee's injury resulted from the negligence of appellant in failing to furnish him the necessary supply of air and to keep the mine at the place where he was working properly ventilated as required by our statutes on the question. That question was submitted to the jury in an instruction about which appellant does not complain. We can not say that the jury's finding is clearly and palpably against the weight of the evidence.

Judgment affirmed.