## B. F. Avery & Sons v. Carter.

(Decided November 14, 1924.)

Appeal from Jefferson Circuit Court
(Common Pleas, Second Division).

1.  Master and Servant—Industrial Board's Finding as to Proximate Cause of Death Not Reversed if Supported by Substantial Evidence.—Under workmen's compensation act (Kentucky Statutes, section 4935), neither circuit court nor Court of Appeals, on appeal therefrom, can reverse industrial board's finding against employer on issues as to proximate cause of injury and ensuing death, if supported by any substantial competent evidence.

2. Master and Servant—Finding Employe was Not Guilty of Such Unreasonable Refusal to Consult Physician as to Defeat Award of Death Benefits Held Warranted.—Industrial board's finding that employe, treating toe burned by molten iron practically as he had prior burns resulting from similar accidents without serious results, was not guilty of such unreasonable refusal, failure, or neglect to call on physician, as to defeat award of compensation for his death, under workmen's compensation act (Kentucky Statutes, section 4886), held warranted.

3. Master and Servant—Words "Results of Pre-existing Disease" in Compensation Act, Held to Refer to Injuries, Not Accidents.— Words, "nor shall they include the results of a pre-existing disease," in workmen's compensation act (Kentucky Statutes, section 4880), as to compensable injuries, held to refer to "injuries," not "accidents," resulting from such disease.

4. Master and Servant—Compensation Apportioned According to Proximate Contribution of Pre-existing Disease and Accident.— Compensation for death proximately contributed to by pre-existing disease, as well as by injuries from accident, should be apportioned according to contribution of each, as in case of mere disability of employe.

5. Master and Servant—Testimony Held to Show Pre-existing Disease and Injuries Resulting from Accident Proximately Contributed to Death.—Physicians' testimony, in proceedings for compensation for employe's death, held conclusive that both pre-existing diabetes and injuries resulting from accidental fall of molten iron on employe's toe contributed to his death.

6. Master and Servant—Finding Death was Result of Injury Held Not Conclusive Because of Absence of Finding Pre-existing Disease Contributed.—Industrial board's finding that employe's death was result of injury, held not conclusive, because of absence of finding that pre-existing disease contributed to it; such finding not excluding disease as proximate factor, and all evidence being that death was proximately contributed to by both disease and accident.

ROBERT F. VAUGHAN for appellant.

SELIGMAN & SELIGMAN and NORTON L. GOLDSMITH for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

C. Harvey Carter was an employe of appellant, B. F. Avery & Sons, a corporation engaged in the manufacturing business in the city of Louisville and had been for a great number of years. Both employer and employe had accepted the provisions of our workmen's compensation act. On May 27, 1921, some molten iron accidentally fell upon and burned the top of the left great toe of Carter and which accident, it is conceded, arose out of

and in the course of his employment and its proximate injuries and results are, therefore, compensable under the provisions of the act. An ungraduated, though perhaps practical, nurse who was employed at appellant's plant rendered first aid treatment by applying some common remedy for burns and bandaged the toe. Carter, during his long service, had sustained a great number of such accidents and had treated them at his home by applying the usually understood remedies in the way of salves, ointments, poultices, etc., and had never suffered any serious results from any such previous burns. He continued to work thereafter at the same service. He was living with the appellee, Ida M. Carter, who was a maiden sister and dependent upon him, and both of them treated the burn, which was, according to the witnesses, no larger than a silver dime, with the same home treatments, but it did not heal and continued inflamed, and in the course of time produced considerable pain to Carter, so much so that he opened his shoe covering the wound by cutting a hole in it, but continued at his work until January 7, 1922, when he applied to a physician. In the meantime the wound had suppurated and the physician applied to discovered that infection had set in and that the place was hollowed out and had increased in size to that of a nickel and there were evidences of what is commonly known as "proud flesh." An operation thought to be necessary was performed and thereafter the toe was treated by the physician, but a gangrenous condition formed, and on March 10, 1922, Carter died.

His sister, the appellee, made application to the compensation board for an award to her as his sole dependent, which the employer resisted on the grounds (1) that (a), the *infection* of the parts was not the proximate result of the burn, and (b), that the death of Carter was due to his "unreasonable refusal, failure or neglect to submit to or follow any competent surgical treatment or medical aid or advice," which if true would constitute a defense under the provisions of section 4886 of our statutes and section 6 of the act as originally enacted; and (2), that the injuries did not produce the death of Carter, but that he died from the effects of diabetes, a preexisting disease, which under the act is not compensable under the terms of section 4880, saying: "Nor shall they include the results of a pre-existing disease." A trial before the board resulted in full compensation under the act, which it declined to modify on petition for review.

Afterwards appellant filed its appeal by petition in the Jefferson circuit court to review the finding of the board, in which court it relied on the same defenses, but the court declined to modify or in any way to disturb the award, and from that judgment this appeal is prosecuted.

The board necessarily found against the employer both of the facts urged in defense (1), and under the provisions of section 4935 (a part of the act), neither the circuit court nor this court on appeal therefrom can reverse that finding if there is any substantial competent evidence in support thereof, and which has heretofore been held by us in a number of cases. We do not deem it necessary to recite the evidence directed to defense (a), of ground (1), more than to state that the testimony of the professional witnesses furnished evidence amply sufficient to support the finding of the board that the *infection* of the wound was the proximate result of the burn, and although there might be testimony and circumstances refuting that theory, yet, under the prior opinions of this court applying the provisions of section 4935, *supra,* as to the power of this and the circuit court to review the findings of fact by the board, we are without authority to disturb that finding under this contention.

The developed facts with reference to defense (b) under ground (1), are in substance that, as heretofore stated, the deceased had served appellant in the same capacity for a long period of time, during which he had sustained many burns as a result of similar accidents and some of which were more severe than the one here involved. He had in each of those instances treated the injury in practically the same manner as he did this one and had experienced no serious consequences, and it appears that had he been in a normal state of physical health his home treatment by himself and sister would have resulted in the same way as to his last accident, the instant case. No physician or surgeon had advised the decedent to submit his case to any surgical or medical treatment or advice. It is true the ungraduated and locally employed nurse suggested that he consult a physician, which was also done by some of his co-employes, but he insisted that he had theretofore successfully treated similar injuries and that he was pursuing such treatment with that one. He knew nothing of the effects of a prior existing disease upon creating nonresistance to the treatment which he was then applying and had theretofore applied to similar injuries; and in the light

of his experience with such matters he did not regard his course as an "unreasonable refusal, failure or neglect" to call upon a physician, but proceeded upon the expectation that the wound would eventually heal as similar ones had done in the past. The board so found and we are unprepared to say that there was no competent evidence to support it. Cases cited by appellant in support of its contention are clearly different in their facts from this one. In some of them a physician advised certain treatment or a specific operation accompanied with the opinion that if the advice was not followed disastrous results would most likely occur, and in each of them a clear case of "unreasonable refusal" to accept and follow the surgical or medical advice was proven. We do not mean to hold that in all cases the refusal must be preceded by professional advice, but only to say that under the facts of this case, in the light of the experience and surroundings of the deceased, we are unwilling to hold that there was no evidence before the board to show the deceased not guilty of such unreasonable refusal as to defeat the award. The alarming condition of the injury did not develop until a short while before he applied to a physician; neither the accident nor the injury was serious at the bginning, and it was of that nature and character which the common experience of mankind teaches may be cured and healed with the usual home remedies possessed by almost every family, and neither because the deceased under the circumstances did not sooner call upon a physician nor follow the advice of nonprofessional advisers, who, under the proof, knew but little if any more than he did as to the nature and possible consequences of the injury, should he in our opinion be found guilty of the character of refusal contemplated by the statute so as to entirely defeat any award.

In presenting ground (2), the original briefs in this case devote much space, time and learning to the proper construction, meaning and application of the words "nor shall they include the results of a pre-existing disease." Briefly stated, counsel for the defendant, Ida M. Carter, insist that the quoted clause refers only to *accidents* that were the result of a pre-existing disease, while counsel for appellant with equal vigor and research argue that the clause refers to *injuries* resulting from pre-existing disease; and cases from many courts are cited in briefs as supporting the respective contentions. Had we

the time, it would be interesting and perhaps profitable from a historical standpoint to review the various compensation acts brought into existence since that method of adjustment for compensation of industrial injuries has been adopted. It appears that the language of our act, found in section 4880 of the statutes, covering compensable injuries is in some respects radically different from that found in the acts of any other jurisdiction; especially is that true with reference to results and consequences of disease and the resultant effects therefrom. But this court, in the very recent case of Robinson-Pettet Co. v. Workmen's Compensation Board, 201 Ky. 719, adopted the construction of the quoted clause, *supra,* as referring to *injuries* resulting from pre-existing disease, and not to *accidents* resulting from such disease. That opinion was rendered since the original briefs in this case were filed and the same attorneys briefed both cases and made the same contentions as to the construction of the clause of the statute, *supra;* and if we are to adhere to that construction it could serve no useful purpose to reiterate the arguments made on either side. We have, on this hearing, fully reconsidered the question raised in that opinion and have concluded that there is no reason assigned for departing from the conclusions reached in the Robinson-Pettet opinion, which indeed was in effect reaffirmed in the subsequent case of Employers' Liability Assurance Corporation v. Gardner, 204 Ky. 216.

But, the unit of resulting consequences in those cases was *disability* of the employe and the compensation allowed him for such unit of disability, both as to extent and duration, was directed to be divided in proportion to the effective causes which produced it, *i. e.,* the accident and the pre-existing disease (where it was shown that both of them contributed concurrently to produce the compensable result) in proportion to the contribution furnished by each as a proximate cause thereof. It is, therefore, insisted that it would be impractical and was, therefore, not intended by the legislature, even under the interpretation of the statute as given in the Robinson-Pettet Company and the Gardner cases, *supra,* to apply to cases involving compensation to dependents where death resulted. We are, however, not cited to any case sustaining the contention and we are unable to see wherein the process by which the apportionment should be made would be any more difficult where death ensued

than where only disability followed. Furthermore, there is no distinction pointed out in the statute between the two consequences for which compensation is allowed, *i. e.*, disability and death. They are both placed upon the same footing and neither of them is compensable to the extent that they were the results of a pre-existing disease. We conclude, therefore, that if the proof in this case established the fact that decedent's death was proximately contributed to by a pre-existing disease, and also by the injuries produced by the accident, the board was in error, as was also the circuit court, in not directing that the compensation should be apportioned according to the rule announced in the cases, *supra,* which brings us to a brief consideration of the facts as to whether there were dual contributing causes, one of which was a prior existing disease and the other the accidental injury.

The uncontradicted testimony is that some six or seven years prior to the accident Carter was suffering from and was treated for diabetes. Under a prescribed course of dieting, accompanied with remedial administrations, his condition improved, and he was enabled to continue at his employment. He seems not to have observed the advice given him by his physician as to his diet, and something like a year before the accident the same diabetic conditions returned, and he was again treated in the same manner followed by some improvement. Some time after the accident occurred the same conditions appeared but in an accelerated form, and a short while before his death he had the symptoms of a fatal stage of that disease or affliction, and the physicians say in substance that both the disease and the accident proximately contributed to his death. As illustrating the character of the testimony given upon that issue, we quote from that of Dr. Richardson, who operated upon and treated the wound of decedent and who was conversant with his prior diabetic condition. He was asked by a member of the board: "Doctor, what we are trying to find out in this case whether this man died from disease or injury, whether his death was due to previously existing disease or to disease that resulted from an accidental injury or traumatism?" And he answered: "You would have to qualify by saying both, because disease was present at the time of the injury and the injury with the infection certainly brought out the disease in its greatest force." He was confirmed by

the testimony of other physicians introduced at the hearing and neither he nor they modified the substance of his above answer in any part of their testimony. All of them explained the reason for their conclusion, *i. e.,* the effects of the prior existing disease introducing non-resistance to the healing of the wound and final culmination in its ultimate condition, and likewise explained the consequences of the accident as an accelerating factor in the increased ravages of the disease, and that testimony, which was all that was heard upon the subject, is conclusive that both the pre-existing disease and the resultant injuries from the accident proximately contributed to the death of the deceased.

But it is said that the board found that his death was the result of the injury and did not find that the pre-existing disease contributed to it, and, therefore, under the rule, *supra,* that finding should be accepted as conclusive. However, we are not inclined to adopt that contention for two reasons, the first being, that the finding itself does not exclude the prior existing disease as a proximate causal factor in producing the death; and, secondly, such a finding, if it had been made, was unsupported by any evidence, since as we have seen all the evidence upon the subject was that the death was proximately contributed to by both the prior existing disease and the accident.

Our conclusion, therefore, is that the board should have apportioned the compensation as herein indicated, and not having done so the circuit court should have directed it to do so, and the judgment is reversed and referred to the board with directions to it to make a new award in accordance with the principles of this opinion.