## Smith, et al. v. Standard Sanitary Manufacturing Company.

(Decided November 27, 1925.)

### Appeal from Jefferson Circuit Court.

1. Master and Servant—Judgment of Compensation Board on Evidence Conclusive.—Judgment of compensation board will not be disturbed on the facts, if there is any evidence to sustain it.
2. Master and Servant—Finding Death was Caused by Heat Stroke Sustained by Evidence.—A finding of the Workmen's Compensation Board that deceased died from heat stroke, arising out of and in the course of his employment, held sustained by evidence.
3. Master and Servant—Death from "Heat Stroke" Held Not Compensable as "Accident" — "Heat Exhaustion" — "Sunstroke." — Where death of employe hauling sand into a foundry with a wheelbarrow was the result of a heat stroke contracted in the course of his employment, from a combination of occupational and physical conditions, and without trauma, such death held not compensable under Kentucky Statutes, section 4880, as "accident;" "heat stroke" being a depression of the vital powers, due to exposure to excessive heat, and manifesting itself as prostration with syncope, etc. (heat exhaustion), as prostration with insensibility, fever, etc. (true sunstroke), or rarely, as acute meningitis; sunstroke, or insolation (in the wider sense).

EUGENE R. ATTKISSON for appellants.

NORTON L. GOLDSMITH and SELLIGMAN & SELLIGMAN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLARKE—Affirming.

Joe Smith, an employe of the Standard Sanitary Manufacturing Company, died on June 3, 1921, and his wife, Hattie Smith, filed a claim for compensation against the company before the Workmen's Compensation Board. Proof was taken. The board awarded Hattie Smith compensation. The company took an appeal to the Jefferson circuit court. The circuit court held that there was testimony to support the finding of fact by the board that Smith died from heat stroke arising out of and in the course of his employment, but reversed the award upon the ground that heat stroke is a disease and not being the result of a traumatic injury was not compensable under our Workmen's Compensation Act, Ky. Stats., section 4880. From this judgment Hattie Smith appeals.

The facts are these: Smith was employed by the Standard Sanitary Manufacturing Company and took up his work on the morning of June 3, 1921. He was examined by Dr. Bruce, the company's physician, and found to be in good physical health. He worked during the day until about 4:45 p. m. Leaving work at that hour he walked home with a co-employe, Sank White, and complained that he was feeling very tired from his work, which consisted in loading sand into a wheelbarrow at a point a few feet outside the foundary door and wheeling it into the foundry and dumping it in a sand pit. Upon his arrival at home he lay down on the floor, called to his wife that he was sick and felt like he had been cooked. He continued to grow worse and a physician was called about seven o'clock, who found his temperature 105°, his pulse rapid and he was more or less delirious. His temperature rose to 107°. He died the next morning. The doctor testified that he died of heat stroke. The temperature in the foundry building was higher than it was outside owing to the melted metal handled there. They were making about 600 bathtubs a day. The maximum temperature that day outside was 90°, but Smith's outside work was in an enclosed place, three sides of which were covered by the company's buildings and the other side being a gate. Smith had not been accustomed to this kind of work. He had been working as a porter at the Seelbach Hotel.

It is earnestly insisted that the finding of the compensation board on the facts is not supported by the evidence and that Smith could not have walked home, about a mile, if he had received a heat stroke. But the circuit court properly held otherwise, for it is well settled that the judgment of the compensation board will not be disturbed on the facts if there is any evidence to sustain it. U. S. Coal & Coke Co. v. Burrell, 205 Ky. 777, 266 S. W. 638, and cases cited. It only remains to determine whether heat stroke is an accident arising out of and in the course of the employment within the meaning of section 4880, Ky. Statutes, which, after specifying the employers included in the act, provides as follows as to its effect:

"It shall effect the liability of the employers subject thereto to their employees for personal injuries sustained by the employee by accident arising out of and in the course of his employment, or for death resulting from such accidental injury; provided, however, that personal injury by accident as herein defined shall not include diseases except where the disease is the natural and direct result of a traumatic injury by accident, nor shall they include the results of a pre-existing disease."

The judgment of the circuit court was rested upon the case of the Jellico Coal Co. v. Adkins, 197 Ky. 684, 247 S. W. 972. In that case Adkins, an employe of the company, after he left its service filed a claim for compensation on the ground that during his service bad air was allowed in the mine which caused an inflammation of the lining of his heart and disabled him. His claim was dismissed upon the ground that his disability was caused by a disease and that same was not the natural and direct result of a traumatic injury by accident.

The cases are precisely alike except that in the one bad air caused inflammation of the heart tissues while in the other hot air inflamed the tissues of the brain and spinal cord. The inflammation in either case is an internal pathological condition resulting from exposure to air rendered abnormal by a known physical agent and without traumatic injury. That any such organic condition is a disease, whether produced by trauma or not and regardless of whether its development be rapid or not, is a recognized fact alike in medical science and common parlance.

The first topic treated under the head, "Diseases Due to Physical Agents," in the Principles and Practice of Medicine by Osler and McCrae, page 380, is sunstroke, heat exhaustion and their more technical synonyms which are defined as different "manifestations following exposure to excessive heat" and said to be one of the oldest recognized diseases.

In 26 Encyclopedia Brittanica, page 110, sunstroke is defined as including heatstroke, etc., thus: "A term applied to the effects produced upon the central nervous system and through it upon other organs of the body by exposure to the sun or to over-heated air. Although most frequently observed in tropical regions, this disease occurs also in temperate climates during hot weather." Webster's New International Dictionary treats heat stroke as the more inclusive term, as indeed it is, and defines it thus: "A depression of the vital powers, due to exposure to excessive heat and manifesting itself as prostration, with syncope, etc. (heat exhaustion), as prostration with insensibility, fever, etc. (true sunstroke), or, rarely, as acute menigitis; sunstroke, or isolation (in the wider sense). The direct rays of the sun, artificial heat in confined quarters, as those of firemen (stokers), glass blowers, and rolling-mill men, or diffused atmospheric heat without proper ventilation, are the causes."

As decedent's death was caused by heat stroke, as is conclusively established by the board's finding of fact, and there was no evidence of any traumatic injury, it is expressly noncompensable by the provision of our statute *supra*, which in this respect differs from most if not all other such laws. Hence, as was pointed out in the Adkins case *supra*, decisions from other courts with reference to whether or not the injury accidentally arose out of the employment are inapplicable and we must look alone to the language of our statute in determining the question. The very purpose of this pecularity in our statute, as was suggested in the Adkins and other cases, was to exclude from its operation all occupational diseases not resultant from trauma in order to avoid the confusion with reference thereto under the compensation acts in other jurisdictions. In fact the statute goes even farther since it excludes all diseases, whether occupational or not, which are not naturally and directly resultant from a traumatic injury by accident, and also the result of any pre-existing disease. In this just as in the

Adkins case the incapacity resulted from a well known disease contracted it is true in the course of the employment, but due to a combination of occupational and physical conditions and without trauma.

So even if we might concede that the heat stroke accidentally arose out of the employment, under the rule adopted in the McNicol's case (215 Mass. 479, 102 N. E. 697) and approved in Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S. W. 152, for determining that much mooted question, it still follows that it is not compensable under our statute, because it is a disease and not resultant from traumatic injury. See also Elkhorn Coal Corporation v. Kerr, 203 Ky. 804, 263 S. W. 342; Wallins Creek Collieries Co. v. Williams, 211 Ky. 200.

The judgment of the circuit court being in conformity with this conclusion, it is affirmed.

The whole court sitting.