## Broughton's Administrator v. Congleton Lumber Company et al.

(Decided October 14, 1930.)

R. E. LEE MURPHY for appellant.

SMITH & REYNOLDS for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

This record presents some delicate and difficult questions arising in the administration of the Workmen's Compensation Law (Ky. Stats., sec. 4880 et seq.). The issue involved was reduced by a stipulation of the parties to the single question, "whether or not claimant suffered personal injury arising out of and in the course of his employment."

The Workmen's Compensation Board did not make a finding of facts, but simply dismissed the application

for compensation. On a petition for review to the circuit court, the action of the board was affirmed. The circuit judge, in his written opinion, stated that the order of the board involved a finding of fact upon some evidence that Broughton's disability was due to pre-existing disease, and did not result from an accident that arose out of and in the course of his employment. Shortly after rendition of the judgment in the circuit court, Broughton died, and the proceeding was revived in the name of his personal representative, who has prosecuted the present appeal. If there is any evidence to support the result reached by the board, it is binding upon the courts. Broadway & Fourth Avenue Realty Co. v. Metcalfe, 230 Ky. 800, 20 S. W. (2d) 988; Big Elkhorn Coal Co. v. Burke, 206 Ky. 489, 267 S. W. 142.

It is necessary, therefore, to examine the entire evidence to determine whether the judgment is supported thereby.

The employee, Harvey Broughton, testified that while assisting three other men in lifting or moving a large timber, 28 feet long and 8 inches square, he sustained injury by the slipping of the timber against or upon a hand spike, giving him an "awful jerk," and causing the hand spike to strike him on the left breast over the fifth rib. He suffered severe pain, expectorated blood, and reported to his foreman immediately that he did not feel able to continue at work. The foreman asked him to drive a truck, which he did, but after the accident he was not able to do his work. On the following day he drove a truck; other men doing the lifting. He drove the truck only because the foreman insisted, saying he was short of men. The accident happened on Friday, May 11, 1928, late in the afternoon, and the next day the men worked only until noon. Broughton remained in bed all day Sunday. He tried to work again on Monday, but told the foreman he was not able to be out. In the evening he advised the foreman he would not come back the next day unless he felt better. He attempted on Monday to walk in a lodge parade, but, after traveling about 200 yards, collapsed with severe pains in his chest. He was taken home in a taxi and remained in bed thereafter, except when going to and from the hospital. He suffered continuous pains in the region of his injury. A doctor was called and treated him for a few days, but that doctor got sick and another physician was put in charge

of the case. Prior to the accident, Broughton never had any serious sickness, and had no knowledge of any lurking malady. He had worked for many years at hard labor, and had suffered no pain or disability. His testimony respecting the accident is corroborated by the three workmen who were assisting him. The foreman testified that Broughton had worked without complaint or loss of time for about six or seven years. He learned of the injury in a few minutes after it occurred, and instructed Broughton not to work any more that afternoon. The foreman further testified that Broughton had not worked any since the accident, but was confined to his home, where the foreman frequently visited him.

Dr. Elmer Northcutt, the family physician, made a formal report to the Workmen's Compensation Board in which he stated, in answer to the form directing an accurate description of the nature and extent of the injury: "Injury to the fifth rib as marked on diagram, ruptured valves, upper and lower, on left side of heart." He described the treatment given as "heart tonics, sedatives, and rest in bed." He reported that the symptoms from which the patient suffered were due entirely to the injury. In describing the injury, in the patient's own words, the doctor said: "Was carrying very heavy timber with three other men. Ones in front dropped their (end) and caused the weight to drop on hand spike, which threw Broughton to the ground, hitting him in the breast over the heart. The injury caused faintness, spitting of blood, and weakness." The report shows that Dr. C. M. McKinley and Dr. John Harvey, both of Lexington, were called into consultation, but neither was called as a witness. Dr. Northcutt testified that he had been Broughton's family physician for four years, but had never been called upon to treat Mr. Broughton, except one time to prescribe for a cold. He found the patient's condition to be "fibrillation of the auricles of both right and left side of the heart." He suffered intense pain in the region of the heart. On his first call, the patient was incompetent to give an account of the accident because of weakness and pain, but later did give a history thereof. The doctor expressed an opinion that the accident could have caused the disability, and afforded a reasonable explanation of the patient's condition. Broughton was confined continuously from the time of the accident. The doctor further stated that the patient had sustained an injury to the pneumogastric

nerve, and that, in his opinion, he would never recover or be able to perform manual labor.

Dr. H. G. Herring testified for the defendant that he had examined Broughton shortly after the accident and found a "heart murmur" which might be attributed to a half dozen causes. He could not state the particular cause, but it was possible it was caused by the accident, or may have been due to disease. Such a condition could be caused by an injury or by several different diseases. He found a "heart lesion" which must have been caused by some disease or injury. It was his opinion that an accident of the character described, or a great exertion of energy, could have caused the condition he found.

Dr. Scott, an eminent specialist on heart diseases, examined the man for the insurance carrier, and reported he was suffering from aortic insufficiency. He saw him about ten days after the accident when he was showing signs of cardiac insufficiency. His conclusion was that the condition resulted from disease, probably from syphilitic or rheumatic infection. But he could not state that the patient had such diseases. He did have an enlarged heart, which could not have resulted from a strain from the handling or dropping of a heavy timber. The conclusion of Dr. Scott was that the man had syphilitic heart disease, but that conclusion was deduced from the physical condition, which was the only evidence he had. He further testified that syphilis did not show in the blood test he caused to be made. It does not appear that Dr. Scott knew of the man being struck on the chest with the hand spike, or of his spitting blood. Apparently his testimony was predicated upon the assumption that the only injury sustained was by a strain from lifting the heavy timber. It was also his opinion that the diseased condition was too far advanced to have originated in a recent accident. The doctor admitted that it was possible that the injury had something to do with the disability. He was of the opinion that the man had had heart trouble for years and the injury may have precipitated it. The accident may have been a precipitating cause of the condition which he found.

It will be noticed that no finding of facts was made by the board. The dismissal of the application, in that respect, is fatally defective, and cannot be sustained unless, perhaps, it can be said that no conflict of evidence could be found on any decisive feature of the case. South Mountain Coal Co. v. Haddix, 213 Ky. 568, 281 S. W. 493;

538

Ashland Limestone Company v. Wright, 219 Ky. 691, 294 S. W. 159.

Section 4880 of the Kentucky Statutes provides that compensable injury shall not include diseases except where the disease is the natural and direct result of a traumatic injury by accident, "nor shall they include the results of a pre-existing disease." In construing the statute we have uniformly held that, where a disability is traceable partly to pre-existing disease, and partly to an accidental injury arising out of and in the course of the employment, it is the duty of the board to ascertain the facts and to apportion the award accordingly. Kingston-Pocahontas Coal Co. v. Maynard, 209 Ky. 431, 273 S. W. 34; Robinson-Pettet Co. v. Workmen's Compensation Board, 201 Ky. 719, 258 S. W. 318; Employers' Liability Assurance Corporation v. Gardner, 204 Ky. 216, 263 S. W. 743; B. F. Avery & Sons v. Carter, 205 Ky. 548, 266 S. W. 50. When the board disposes of an application for compensation summarily without specific findings of fact on every essential and vital feature of the case, it is our practice to remand the record to the board, with directions to determine the relative contributions of pre-existing disease and traumatic injury to the disability, and to apportion the award accordingly. South Mountain Coal Co. v. Haddix, 213 Ky. 568, 281 S. W. 493; Broadway & Fourth Avenue Realty Co. v. Metcalfe, 230 Ky. 800, 20 S. W. (2d) 988; B. F. Avery & Sons v. Carter, 205 Ky. 549, 266 S. W. 50; Noe v. Noe, 229 Ky. 490, 17 S. W. (2d) 405; Employers' Liability Assurance Corporation v. Gardner, 204 Ky. 216, 263 S. W. 743.

The uncontradicted evidence shows that Broughton sustained a serious injury in the course of his employment; that before the accident no disease sufficient to disable him had been discovered; that the physicians treated him for his injury, which was sufficient to confine him to his house; and that, in the course of eighteen months, he gradually grew worse until he died. The only evidence of a pre-existing disease is found in the opinion of Dr. Scott. It does not necessarily exclude the fact or the results of an accidental injury. It admits the possiblity that the disease may have been accelerated by the accident. The significant omission from the hypothetical question submitted to the doctor of any reference to the blow upon the breast which the patient sustained, or to his immediate expectoration of blood, impairs the proba-

tive value of his opinion. Cf. Black Mountain Corp. v. Black, 220 Ky. 85, 294 S. W. 820. Furthermore, his opinion was but a deduction from the diseased condition he found, which he regarded as too far advanced to be traceable to a recent injury. A judgment or finding may not be rested upon a pyramiding of inferences. Sutton's Administrator v. Louisville & Nashville R. R. Co., 168 Ky. 81, 181 S. W. 938; National Surety Co. v. Redmon, 173 Ky. 294, 190 S. W. 1081. An inference from a few of the proven facts cannot be adopted when it is repelled by other facts equally well proven. Moore on Facts, sec. 596, p. 595. Here we are without proof that the patient had any disease capable of causing the condition found to exist, while positive proof is produced that an accidental injury was sustained sufficient to account for the disability. The most that could be claimed for the evidence is that it would tend to indicate the presence of a diseased condition already existing when the accident occurred. But that circumstance would not preclude a finding that an injury had been inflicted. Indeed, it would not afford any evidence that no injury had been sustained. If both accidental injury and pre-existing disease concurred to cause a disability, the case would be similar to Robinson-Pettet Co. v. Workmen's Compensation Board, 201 Ky. 719, 258 S. W. 318. In such cases the board is required to find the proportion of disability caused by the accident operating upon a workman afflicted with a dormant disease.

This case presents a reverse situation to that exhibited in Wallins Creek Collieries Co. v. Williams, 211 Ky. 200, 277 S. W. 234, where compensation had been allowed, although the employee died of pre-existing disease, unaffected by any accidental injury. Cf. Harlan Wallins Coal Corp. v. Carr, 220 Ky. 785, 295 S. W. 1017, and Smith v. Standard Sanitary Mfg. Co., 211 Ky. 454, 277 S. W. 806.

It was the duty of the board to separate the results, if any, of pre-existing disease, from those arising from the accident, and to make an award of compensation for the disability caused by the accident. South Mountain Coal Co. v. Haddix, 213 Ky. 568, 281 S. W. 493; B. F. Avery & Sons v. Carter, 205 Ky. 552, 266 S. W. 50. Employers' Liability Assurance Corporation v. Gardner, 204 Ky. 216, 263 S. W. 743; Kingston-Pocahontas Coal Co. v. Maynard, 209 Ky. 431, 273 S. W. 34.

Since the case must be remanded to the board for further hearing, and additional evidence may be adduced, all questions not expressly decided are reserved.

The judgment is reversed for further proceedings in accordance with this opinion.