## Wolfe et al. v. American Rolling Mill Co.

March 14, 1939.

Watt M. Prichard, Judge.

JOHN T. DIEDERICH and JOHN STANLEY for appellant.

CALDWELL & GRAY for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Reversing.

On August 1, 1935, Melvin Edward Wolfe, an employee of the American Rolling Mill Company, was engaged in slagging molten metal. About 3 o'clock in the afternoon he became so ill or incapacitated that his foreman proposed to send him to a hospital, but instead, and at his insistence, he was taken by fellow workmen to his home where he died the following morning.

His widow, Florence Wolfe, on behalf of herself and their four minor children as his dependents, filed claim for an adjustment of compensation with the Workmen's Compensation Board asserting that decedent's death was due to accident arising out of and in the course of his employment. In setting out in the application how the accident occurred, it is said:

"Employee worked within four or five feet of molten steel, approximately 3200 degrees Fahrenheit, when he received burns which produced, caused and brought about his death."

On a hearing before a referee of the board, an opinion and order was rendered by the referee denying the claim for compensation and dismissing the application, but on a full board review had at the behest of the claimant, the board in an opinion and award by the Hon. W. J. Fields reversed the finding of the referee and awarded the claimant compensation in the sum of $12 per week for a period not to exceed 335 weeks from August 2, 1935, and not in excess of $4,000, with interest on past due installments and a burial expense not in excess of $75. On appeal to the circuit court it was adjudged that the findings of fact made by the board on full board review be affirmed but it was further ad-

judged that such findings of fact did not support the award made; that the award made was not in conformity with the provisions of the act and therefore the claimant was not entitled to recover compensation; that the award made be set aside, the claim for compensation dismissed and the claimant is appealing.

It has been stipulated that appellant and appellee had accepted and were operating under the provisions of the Workmen's Compensation Law, Kentucky Statutes, section 4880 et seq., and that the wages of deceased were sufficient to justify the amount of the award. Under the stipulation and as is conceded by both parties, the only question presented by this appeal is whether the alleged injuries that caused the death of appellant's decedent were compensable under our compensation laws.

Section 4880, Kentucky Statutes, which is section 1 of the Workmen's Compensation Act as amended, provides in part:

"It shall affect the liability of the employers subject thereto to their employees for a personal injury sustained by the employee by accident arising out of and in the course of his employment, or for death resulting from such accidental injury; provided, however, that personal injury by accident as herein defined shall not include diseases except where the disease is the natural and direct result of a traumatic injury by accident, nor shall they include the results of a pre-existing disease * * *."

According to the death certificate and the opinion of a physician who was called to treat deceased the morning after he had been taken home from appellee's plant, his death was due to heatstroke. The finding of the referee of the board that the injury causing the death of appellant's decedent was not compensable was based on the case of Smith et al. v. Standard Sanitary Manufacturing Company, 211 Ky. 454, 277 S. W. 806, 807, and we assume the lower court was guided by the opinion in that case. The opinion in that case, after referring to definitions of heatstroke and sunstroke in medical works, encyclopedias and dictionaries, held that death or injury resulting from heatstroke was not compensable under our statutes because it is a disease, and in the course of the opinion said:

"As decedent's death was caused by heat stroke, as is conclusively established by the board's finding of fact, and there was no evidence of any traumatic injury, it is expressly noncompensable by the provision of our statute."

Appellee is relying on the Smith case and kindred cases from other jurisdictions and is insisting that they be followed. Appellant challenges the soundness of the Smith case, insisting that it should be overruled, and in an exhaustive brief cites a number of cases and text authorities to the effect that sunstroke or heatstroke which are treated as synonymous and interchangeable is not a disease but an accident and compensable under our statutes. As appears from briefs filed by respective parties and from further research there is a conflict of opinion on that question. However, in Paist v. Aetna Life Insurance Company, D. C., 54 F. (2d) 393, it is said: "The great weight of authority is that sunstroke itself is not a disease."

As is disclosed by the evidence appellant's decedent was usually engaged in making stoppers but for a short time prior to his death worked part of the time in slagging metal which as explained in the record is blowing the slag from molten metal by means of compressed air. His duties required him to work within a few feet of molds into which molten metal heated to about 2800 degrees Fahrenheit was being poured. He was 45 years of age, slight of stature and frail and delicate. As appears from the findings of fact of the referee and in the opinion on full board review which was confirmed by the court and which is in accord with the evidence, he was first affected in the morning but after being relieved by another workman for some time returned and attempted to continue his work until about 2:30 in the afternoon when he was in a state of practical collapse. Workmen noticed that his face was very red and, as is shown by the evidence, it later developed that it was burned, parched, and blistered. He suffered attacks of vomiting, cramps and his muscles were drawn and knotted and before death lapsed into unconsciousness. The physician who was called to treat him died before the hearing but another physician who was called the following morning stated that from the history of the case the death was due to heatstroke.

From our recital it will be seen that we are not dealing with a case of heatstroke caused by natural heat

intensified by conditions in some inclosure or by ordinary artificial heat to which laborers might ordinarily be subjected in pursuing their employment, or in other words, we are not dealing with conditions to which mankind in general is subjected and which may bring about what is commonly known as heatstroke or sunstroke. Necessarily it takes intense heat to melt steel or metal from which it is made, but the ordinary and inexperienced man has little conception of a temperature of 2800 degrees Fahrenheit, but he does know from experience and as a matter of common knowledge that heat of much less intensity is a deadly and destructive force. We need not pause here to discuss cases cited relating to heatstroke nor to consider the challenge to the correctness of the opinion in Smith v. Sanitary Manufacturing Company, supra, since we do not conceive it to be necessary to overrule that opinion in order to sustain the award made by the compensation board on full board review, because the quoted excerpt and other portions of that opinion clearly distinguish it.

In that case as stated in the opinion there was no evidence of traumatic injury, and, although it is stated it was warmer in the building than on the outside owing to the molten metal in the building, there was no showing that the employee came in direct contact with any unusual artificial heat, while, in this case, it is shown that the employee was subjected to heat of such intensity as to blister his flesh and leave visible marks of injury. Suppose the liquid metal itself had been thrown against the employee inflicting burns sufficient to produce death, then it certainly could not be urged with the least degree of consistency that his injuries were not compensable under our statutes. It would take an acute power of discernment to distinguish in principle between the assumed illustrative facts and the circumstances revealed by the record in this case. In the first instance death would result from burns received in direct contact with the molten metal while in the latter, it did result from coming in contact with the intense and deadly heat thrown off from the metal.

In Great Atlantic & Pacific Tea Company v. Sexton, 242 Ky. 266, 46 S. W. (2d) 87, 89, it is said:

"If an injury is suffered in the course of employment, unexpectedly, and without design, and can be traced to a definite time, place, and cause, it is an

accident within the popular sense of that term and as it is used in the compensation laws.''

Donohue v. Washington National Insurance Company, 259 Ky. 611, 82 S. W. (2d) 780, 781, quotes the following definition of accident:

" 'An event that takes place without one's foresight or expectation. An undesigned, sudden and unexpected event, * * * happening by chance or unexpectedly, taking place not according to the usual course of things.' 'An event which proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected.' ''

We unhesitatingly conclude that there was sufficient evidence on which to base a finding that appellant's decedent suffered an accidental injury as defined in the Sexton and Donohue cases and authorities therein cited which resulted in his death. In the former it is further said:

"In this case, appellee's injuries may be traced directly to his coming in contact with meats laden with tularæmia germs. The time, the place, and the cause of the injury are determinable with reasonable certainty. * * * It was not a gradual development arising out of natural dangers incident to the employment, but was sudden, unexpected, and unusual, without any of the distinctive features of an occupational disease.''

There is no marked distinction between that and the present case, the only distinctive dissimilarity being that in the Sexton case the impact of the external force was not immediately felt, but later made itself manifest, while in the present case the shock and injury from the external physical force was immediate, therefore, the quoted excerpt has equal if not greater application here. It is pointed out in the opinion on full board review that if the Smith case is to be applied in every case of this character, the board and courts would be forced to the ridiculous position of finding that an employee died of disease even though his flesh be so cooked by artificial heat that it would fall from the bone. Such a holding would do violence to the spirit and purpose of our compensation law which is to be liberally construed to carry out its humane and beneficent purposes in favor of injured employees. Here the ulti-

mate result is the same and there is no difference in principle, but only in the degree or intensity of the external force that struck the employee and its immediate visible effects.

Wherefore, the judgment is reversed, with directions to set it aside and to enter judgment affirming the award made by the compensation board.

Whole Court sitting.