# Black Mountain Corporation v. Snipes et al.

May 20, 1941.

J. B. Snyder for appellant.

Greene & Hannah for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Affirming.

This is an appeal from a judgment of the Harlan circuit court upholding an award to appellee, William Snipes, for compensation on account of 75 per cent disability resulting from an accident which occurred to him on the 18th day of August, 1938, while in the employ of appellant, the Black Mountain Corporation.

Appellant contends that the Workmen's Compensation Board and the circuit court erred in failing to fix any disability by reason of pre-existing disease (arthritis).

Appellee was brushing rock to make greater clearance in appellant's mine when a large quantity of rock fell on him. He was in a crouched position at the time of the accident and was crushed and mashed with his feet at his chest and his face on the floor of the mine. He remained in that position for about an hour before fellow employees were able to extricate him from the débris. He suffered injuries to his feet, breast, back, legs, hips, and pelvis as a result of this accident. His foot was in a cast for a great many weeks and he was placed on a Bradford frame with his feet and head extended downward and the middle portion of his body extended upward, remaining thereon without moving for a period of 66 days. As a result of the accident he has more than a normal separation of the pelvic bones, a

downward dislocation of the sacro-iliac articulation, a crushed in fracture of the third and fourth lumbar vertebrae, and the fourth vertebra displaced about one inch. He sustained a fracture of the foot rendering it stiff and enlarged and his left leg so drawn that he cannot straighten it out. The doctors introduced by the claimant testified that as a result of these injuries he had a 75 per cent disability. Dr. Giannini, a company doctor, testified as follows:

"Q. Where is the arthritis shown? (by the X-ray) A. Between the 3rd and 4th lumbar vertebrae, there was some arthritis between the 2nd and 3rd.

"Q. How long had Mr. Snipes been afflicted or bothered with arthritis before this injury? A. He was complaining some time possibly a couple of years before hand. I don't remember how long, and I advised him to have his teeth pulled for that reason.

"Q. Did he have them pulled? A. Yes sir.

"Q. Arthritis causes pain? A. Most generally always does to some parts of the body wherever it may be.

"Q. If Mr. Snipes complains of pain in his back and hips, is there any way to tell whether that would be coming from fractures or arthritis? A. Well, it might be from both.

"Q. He could have pain if he had no injury? A. He could have."

The following is the testimony of Dr. W. P. Cawood, another company doctor.

"Q. What arthritis is shown? (by the X-ray) A. He has got lapping and long prongs sticking out on the vertebrae.

"Q. Could the fusing of the vertebra you speak about be caused by arthritis? A. They do sometimes."

He stated further that if Snipes had arthritis at the time of the injury it would still cause pain. He stated, "Yes sir, arthritis ougnt to cause pain, if he had it any time he would have pains at times." There was no other testimony as to the existence of a pre-existing dis-

ease and there was no testimony that Snipes was afflicted with arthritis previous to this injury or that the arthritis at any time was sufficiently serious or troublesome to cause disability. It is true that Dr. Giannini testified that Snipes complained to him about pain in his back about two years previous to the injury and that he advised him to have his teeth pulled to relieve the pain; but there is no testimony that the pain did not disappear after the teeth were pulled; nor did anyone testify that arthritis caused the pain.

On the other hand, Snipes worked regularly up to the time of the injury, which fact, in the absence of a showing to the contrary, demonstrates he was not disabled before the injury; especially since he testified positively that he had never been disabled by disease. It is therefore apparent that there was not sufficient evidence to sustain the contention that any part of claimant's disability was attributable to a pre-existing disease.

In construing Section 4880, Kentucky Statutes, we have consistently held that where a disability is traceable, partly to a pre-existing disease and partly to a compensable injury, it is the duty of the board to ascertain the percentage of such disability traceable to each and in its finding to apportion the award accordingly. Broughton's Adm'r v. Congleton Lumber Co., 235 Ky. 534, 31 S. W. (2d) 903, and cases therein cited. But such construction has no application, where, as here, there is no evidence that a part of the disability is traceable to pre-existing disease. A contention must be supported by evidence of probative value to merit the consideration of the board.

We are therefore of the opinion that the judgment should be, and it hereby is, affirmed.