## Hoosier Engineering Co. v. Sparks et al.

May 21, 1946.

Craft & Stanfill for appellant.

D. G. Boleyn and D. B. Wooten for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Reversing.

In July, 1941, the appellant, Hoosier Engineering Company, was engaged in constructing a high voltage power line in Leslie county. During the forenoon of July 25, 1941, the appellee, Henry Sparks, and other employees of the company, cut brush on the right of way, which extended up a mountain side, and during the afternoon burned the brush which had been cut in the morning. Sparks stood on the upper side of the burning brush pile and placed the brush on the fire as two fellow employees pitched it down to him. About 2:30 p. m. appellee became unconscious and was taken to a hospital at Hyden, Kentucky, where he was treated by Dr. John H. Kooser. According to appellee, he did not regain consciousness until the next morning, and was confined to his room for nearly a month. Appellee's regular occupation was farming, and July 25, 1941, was the first day he worked for appellant. On October 17, 1941, an agreement, signed by the employer and employee, was filed with the Workmen's Compensation Board, and with the agreement a receipt showing that the employer had paid to the employee $40.56 in final settlement of compensation due under the Kentucky Workmen's Compensation Act. KRS 342.001 et seq. The agreement recited that the injury was sustained on July 25, 1941; that the employee "became overheated while burning brush on right of way"; and that the period of disability was from July 26, 1941, to August 22, 1941. The agreement was approved by the board on October 21, 1941. On August 4, 1942, the employee filed with the board a motion to reopen the case. His motion was sustained, and it was ordered that the case be placed on the docket for trial and hearing upon filing of an application for adjustment of claim. Sparks filed his application for adjustment of claim on September 9, 1942, claiming that on July 25, 1941, he became overheated while burning brush on the right of way where his employer was building a high voltage electric power line. He stated in the application that he was suffering from nervous exhaustion and, as a result, was permanently and totally disabled from following his occupation or any occupation for which he was qualified. The applicant took his own and Dr. John H. Kooser's depositions. The employer introduced no proof because it was of the opinion that the injury, if any, was not compensable. The referee found that the applicant had sustained an injury in an accident arising out of and in the course of his employ-

ment, and that he was totally and permanently disabled. Upon a hearing by the full board it was held that the injury, though a heat stroke, was compensable under the Workmen's Compensation Act in view of the manner in which it was sustained, but the board found that there was no evidence justifying an award for total permanent disability, and, on account of the unsatisfactory nature of the evidence as to the extent of the injury, set aside the award of the referee. The order of the board concluded:

"The Plaintiff is ordered to appear before Dr. Franklin Jelsma, a disinterested and duly qualified Physician, of Louisville, Kentucky, on or before the 20th day of June, 1943, for a thorough and complete physical examination for the purpose of determining whether or not he is suffering from the effects of the heat stroke complained of, and if so, to what extent, and the duration thereof. Dr. Jelsma is directed to make his report to the Board, and to deliver to the Plaintiff and Defendant each a copy thereof, and either party will be given a reasonable time and opportunity to take his deposition and file the same with this Board to be used as evidence in the case."

Pursuant to the order, Sparks was examined by Dr. Jelsma, who filed a report of the examination with the board. He stated in his report that he found no objective disturbances involving the nervous system nor any objective disturbances elsewhere, but, basing his opinion on the history of the case given him by Sparks and on purely subjective symptoms, he stated that the "patient has about 50 per cent. total permanent disability." He suggested that a blood sugar test be made. This test was made by Dr. Dana Snyder, who reported that the test showed 100 mg. Dr. Jelsma's deposition was taken, and on direct examination he stated that a blood sugar test of 100 mg. is normal and has no significance. Basing his opinion on the clinical facts and the history of the individual disturbances, he was of the opinion that Sparks had a 50 per cent. total permanent disability. On cross-examination Dr. Jelsma was asked the following questions and made the following answers:

"Q. How much of your findings were based upon actual clinical findings and how much was based upon history given by the patient? A. The history given to me

by the patient and the clinical findings, that is the findings which we arrived at after testing certain parts of the body are actually important in this case, as in all cases, and considering the two factors, that is the patient's complaints first, I would say that they are the main point of consideration of his disability, because the second phase of the examination, which is the objective study of him, reveal nothing of any organic nature, so the answer is that most of the disability is based on his subjective complaints, that is, all the things he complains of.

"Q. As a matter of fact, Doctor, did you find anything, from the laboratory or clinical standpoint, aside from the man's history or complaints on which you could base any disability? A. No. sir.

"Q. As a matter of actual fact, your estimate of this man's disability is based almost, if not entirely, upon the complaints the man made to you? A. Yes and with the knowledge that the patient did have symptoms similar to those of patients with heat stroke.''

He was asked if his estimate of disability would be affected by the knowledge that Sparks had been able to do all the work that is required in ordinary farming and had worked during the past year, including the summer months, just as he had worked prior to July, 1941, and the witness answered in the affirmative. Dr. Jelsma was then asked these questions and made these answers:

"Q. You never saw this man until your examination on June 17, 1943? A. No sir.

"Q. I take it, if you could be shown by evidence of lay witnesses that this man has had prior to 1941, a condition of fainting spells during the summer months, that is, that he would get hot and would become dizzy and would have to lie down, prior to the time of his alleged heat stroke in this case, would that condition, in your judgment, contribute to his present condition? A. If it has disturbed him and has the same results, or if they are the same reasons for which he was examined, I don't know why they wouldn't contribute to the disability for which we examined him. We saw him on June 17th for the possibility of a heat stroke and his complaints, were consistent with a heat stroke. It may be that his previous disturbance played a part in his so-called heat stroke,

but I don't have any way of determining whether it would or not, however I believe that if a man can and has worked in the meantime, that his disability is diminished or is directly in proportion to his ability to work.

"Q. In other words, as far as the injury is concerned, it didn't cause the disability he has now? A. Yes, that is right."

The employer then took the depositions of Will Morgan and Sarah Ellen Morgan, neighbors of Henry Sparks. They testified, in substance, that Sparks worked on the farm just as he had worked prior to July, 1941, and that prior to that date he had "sick spells" and "fainting spells" similar to those of which he now complains. Exceptions to these depositions were filed and were sustained, the board in its opinion giving as a reason for its ruling:

"When the original order of the Board was entered June first, 1943, vacating and setting aside the opinion of the Referee, and directing a medical examination of the plaintiff, it was not the purpose of the Board to reopen this case for depositions, or additional proof other than that of Dr. Jelsma, who was designated by it to make the examination."

The board found that Sparks had suffered a 50 per cent. permanent partial disability, that the disability was compensable, and entered an award accordingly. The award was affirmed by the circuit court, and the Hoosier Engineering Company has appealed.

Appellant's first contention is that this case is ruled by Smith v. Standard Sanitary Manufacturing Co., 211 Ky. 454, 277 S. W. 806, where it was held that a heat stroke is a disease and not being the result of a traumatic injury is not compensable under our Workmen's Compensation Act. The Smith case was followed in the recent case of Mellon v. Ashland Coca-Cola Bottling Co., 302 Ky. 176, 194 S. W. 2d 171. In the Mellon case the heat stroke suffered by the employee resulted from the natural heat of the day. The appellant in that case relied upon Wolfe v. American Rolling Mill Co., 277 Ky. 395, 126 S. W. 2d 835, in which it was held that death due to heat stroke resulting from artificial heat is compensable. It was argued in the Mellon case that the court

had, in the Wolfe case, in effect, overruled the Smith case, but, in distinguishing the cases, it was said:

"The Court did depart from its positive and unqualified position in the Smith case, but clearly differentiated between heat stroke induced by artificial causes and one produced by the natural heat of day."

. We are not disposed to extend the rule announced in the Smith case, and we think the present case falls within the rule of Wolfe v. American Rolling Mill Co., supra. It is true, as pointed out in appellant's brief, that there was some evidence of traumatic injury in the Wolfe case. The employee was working near molds containing molten metal, and his face was burned and blistered. These marks on his face merely evidenced the intensity of the heat which caused the heat stroke. In the present case the appellee was piling brush on a fire, necessarily in close proximity to the burning brush pile, and while so engaged was overcome by the heat. There was no claim that he came in actual contact with the blaze or that his skin was burned or blistered, but if he suffered a heat stroke it resulted from coming in contact with the intense heat thrown off from the burning brush. The artificial heat which caused the injuries in the Wolfe case and the present case differed only in intensity or degree. In each case the employment exposed the employee to the risk and bodily harm resulted, although in the case before us it may not be possible to point to the exact location of the lesions. In view of the evidence before it, the Compensation Board correctly found that the injury was compensable.

Appellant's next and final contention is that the Compensation Board erred in striking the depositions of Will Morgan and Sarah Ellen Morgan and refusing to consider them, and we are of the opinion that this contention is sound. The board based its finding of 50 per cent. total permanent disability caused by heat stroke resulting from exposure to artificial heat on the testimony of Dr. Jelsma who in turn based his opinion on purely subjective symptoms. He stated that his opinion would be affected by knowledge that appellee had similar symptoms prior to July 25, 1941, and that he worked subsequent to that date just as he had worked prior thereto. Under the peculiar facts of this case, it was important that the board should have before it all avail-

able information in order that it might determine with justice and fairness to both parties (1) whether the appellee suffered a heat stroke on July 25, 1941, or on some date prior thereto; and (2) if he suffered a heat stroke while employed by appellant, the extent of his disability. The board should have considered the depositions of Will Morgan and Sarah Ellen Morgan after giving appellee an opportunity to rebut them.

The judgment is reversed, with directions to remand the case to the Workmen's Compensation Board for further proceedings, including the taking of additional proof by the parties if they so desire.