[S. F. No. 14251. In Bank.—April 29, 1932.]

PACIFIC INDEMNITY COMPANY, Petitioner, v. INDUS-
TRIAL ACCIDENT COMMISSION OF THE STATE
OF CALIFORNIA and JOHN DRISCOLL, Respond-
ents.

Bronson, Bronson & Slaven and Harold R. McKinnon for
Petitioner.

A. I. Townsend for Respondents.

LANGDON, J.—This is a review of an award of the
Industrial Accident Commission. Respondent Driscoll was

employed by petitioner's assured as a teamster. He had an artificial leg. On May 9, 1930, while driving his team, the horses shied, causing him to lose his balance. His artificial leg was caught and broken beyond repair. He had no money to purchase a new leg and was unable to continue his work without it. The Commission made its award for temporary total disability from May 9, 1930, to October 1, 1930, in the sum of $383.44, and the further sum of $19.45 per week to continue until further order. The order also included an award for "medical treatment", which obviously, in this case, was the replacement of the artificial leg.

The order of the Commission is based upon section 3, subdivision 4, of the Workmen's Compensation Act, as amended in 1919 (Stats. 1919, p. 911, chap. 471), which provides: "The term 'injury' as used in this act, shall include any injury or disease arising out of the employment *including injuries to artificial members . . .*" Petitioner contends that this section goes beyond the scope of article XX, section 21, of the California Constitution, under which provision the Workmen's Compensation Law was enacted, and is therefore unconstitutional. In brief, the argument is that the Constitution permits awards to be made for injuries to *workmen* and not their personal property, and that injury to an artificial member is not an injury to a workman.

The constitutional provision reads, in part, as follows:

"The legislature is hereby vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workmen's compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workmen for *injury or disability*, and their dependents for death incurred or sustained by the said workmen in the course of their employment, irrespective of the fault of any party. A complete system of workmen's compensation includes adequate provisions for the comfort, health and safety and general welfare of any and all workmen and those dependent upon them for support to the extent of relieving from the consequences of any injury or death incurred or sustained by workmen in the course of their employment . . . full provision for such medical, surgical, hospital *and other remedial*

*treatment as is requisite to cure and relieve from the effects of such injury* . . . all of which matters are expressly declared to be the social public policy of this state, binding upon all departments of the state government.'' (Italics ours.)

The important words are "workmen", "injury" and "disability". It is necessary for us to determine whether, under any reasonable interpretation of these terms, the injury sustained in the instant case can be compensable. Petitioner has argued strenuously that there was no injury to a *workman,* citing as authority *London Guaranty & Acc. Co.* v. *Industrial Acc. Com.,* 80 Colo. 162 [249 Pac. 642], and *San Francisco* v. *Industrial Acc. Com.,* 183 Cal. 273 [191 Pac. 26]. Neither case is controlling. *San Francisco* v. *Industrial Acc. Com.* was concerned with the question whether industrial disease came within the scope of the term "injury" in the original constitutional provision, and after briefly remarking that "injury" referred to "bodily injury" the court proceeded to adopt the broadest possible construction of the term in order to bring industrial disease within its meaning and thus to uphold the legislative definition. The subsequent amendment of the Constitution in 1919, adding the words "or disability" makes the decision pertinent only as an indication of how liberal the rule of construction should be. *London Guaranty & Acc. Co.* v. *Industrial Acc. Com., supra,* is a memorandum opinion which disposes of the case without any discussion of the issues. The court said: "Compensation can be awarded for personal injuries only . . . which means injury to the person . . . A wooden leg is a man's property, not part of his person, and no compensation can be awarded for its injury." This language, however, was directed toward a *statute* which referred only to "personal injuries". It may well be that in the absence of statutory authority, the Commission might not have the power to compensate for injuries to an artificial member. Direct statutory authority does exist, however, in this state, and the only question before us is whether the legislature had the constitutional power to vest such authority in the Commission.

In construing special constitutional provisions of this nature we are in danger of overlooking the cardinal rule which limits the power of the courts to declare statutes un-

constitutional. The presumption is in favor of constitutionality, and the contravention of the Constitution must be clear and unquestionable before it can be so declared. For the purpose of determining constitutionality, we cannot construe a section of the Constitution as if it were a statute, and adopt our own interpretation without regard to the legislative construction. Where more than one reasonable meaning exists, it is our duty to accept that chosen by the legislature. Many decisions have made this clear, and of them one of the most important is *San Francisco* v. *Industrial Acc. Com.*, *supra*, where the court said (p. 279): " . . . where a constitutional provision may well have either of two meanings, it is a fundamental rule of constitutional construction that, if the legislature has by statute adopted one, its action in this respect is well nigh, if not completely controlling. When the legislature has once construed the Constitution, for the courts then to place a different construction upon it means that they must declare void the action of the legislature. It is no small matter for one branch of the government to annul the formal exercise by another and coordinate branch of power committed to the latter, and the courts should not and must not annul, as contrary to the Constitution, a statute passed by the legislature, unless it can be said of the statute that it positively and certainly is opposed to the Constitution. This is elementary. But plainly this cannot be said of a statute which merely adopts one of two reasonable and possible constructions of the Constitution."

Bearing these matters in mind, we are satisfied that this statute comes within the scope of the legislative power. It should be noted that section 21 permits compensation for injury *or disability*. There can be no question but that a man who has lost the use of an artificial limb is disabled. Indeed, where is the fundamental difference between injury to a real and an artificial member? A man is injured and his leg is amputated; he has lost the use of the stump and is given an artificial limb. This, we say, is justifiable, for it tends to relieve him from the consequences of the injury. Here is a man who is placed by an industrial accident in the identical position; that is, he has lost the use of the remainder of the limb and requires an artificial leg to relieve him from the consequences of the accident. But

this man, it is contended, is not entitled to that relief because the amputated leg was wood and not flesh. Nothing in the constitutional provision can be made to sanction this absurd result. In plain words, it permits compensation for "injury or disability" to "workmen". If a man with a wooden leg is fully able to perform his duties, and thereafter, upon the loss of the said leg, is unable to perform his duties, how can it be said, in defiance of the legislative declaration, that he is uninjured? And even if we take this extreme and arbitrary view of the term "injury", to say that this man is not disabled is directly to contradict the physical facts. We cannot annul this award without wiping out of the Constitution the words "or disability" which were added by the people in 1919.

Fear is expressed by petitioner that the award is the forerunner of others for injuries to clothes, tools, automobiles or other personal property. We anticipate no such result. The Constitution, in our opinion, authorizes compensation for injury to the body of the workman, including every part thereof, natural or artificial, which is essential to its proper functioning. Other things, such as clothes and tools, may be necessary if he is to perform his duties, but their destruction does not cause him a physical injury or disability. His body may function without them. The distinction is, we think, quite clear, and should not be difficult to apply. But these matters are really irrelevant because purely speculative. The legislature has only gone so far as to provide for compensation for injury to *artificial members*. Whether it may in the future seek to go beyond this point is not a proper question for our consideration at this time. The constitutionality of the statute before us being established, it follows that the Commission was justified in granting compensation to respondent.

The Commission made its award in the sum of $383.44, payable forthwith, and the further sum of $19.45 a week, beginning October 2, 1930, until termination of disability or further order of the Commission; and also awarded medical treatment. We think the record will support such award only in so far as it requires the furnishing of another artificial limb to take the place of the one destroyed, and compensates the employee during the period in which he was without such artificial limb through no fault of his

own. No other basis of disability indemnity is presented. Since it does not appear in the record whether an artificial limb has been furnished, we cannot at this time direct that the Commission continue or terminate its award. The award is therefore annulled and the cause remanded to the Commission for proceedings in consonance with the views herein expressed.

Curtis, J., Shenk, J., Seawell, J., Tyler, J., *pro tem.*, and Nourse, J., *pro tem.*, concurred.

Rehearing denied.