## Standard Elkhorn Coal Co. v. Reffett et al.

(Decided Jan. 24, 1933.)

HILL & HOBSON and JAMES & HOBSON and LIVEZEY, HOGSETT & McNEER for appellant.

JOE P. TACKETT for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This appeal presents for review an award of the Workmen's Compensation Board allowing. James Reffett adjusted compensation for the loss of both great toes while he was engaged in mining coal as an employee of the Standard Elkhorn Coal Company. It is agreed that the coal company and Reffett had elected to operate, and were operating and working, under the Workmen's Compensation Act (Ky. St. sec. 4880 et seq.), and that his injury, if any, was caused "by an accident arising out of and in the course of his employment." (Ky. St. sec. 4880.) The board awarded him compensation at the rate of $12 per week for a period of thirty weeks from the 13th day of May, 1930, with 6 per cent. interest on all past-due payments for the injury sustained on May 6, 1930, which resulted in the loss of both his great toes.

It is earnestly and strenuously argued by the coal company that the board erred (a) in failing to make separate finding of facts as required by section 4933, Ky. Statutes; (b) in failing to apportion the award and determined what portion of his disability was due to pre-existing disease, and to separate it from the disability due to the injury for which he claims compensation; and (c) in awarding to him any compensation whatsoever.

It is fairly shown by the evidence that a block of coal, weighing 75 or 80 pounds, fell on Reffett's feet, injuring both of his big toes. At the time he sustained the injury, the fellow servants of Reffett were near enough to see, and did see him sustain the injury. Before the lump of coal fell on his feet, the side of one of his feet had been mashed. It is satisfactorily shown that this injury to this foot had gotten well, and that, at the time the lump of coal fell on both feet, his toes were normal and sound, but naturally croked, and lapped over the other toes. The sound condition of his toes, before they were injured by the falling of the lump of coal was shown by some of his neighbors. After he sustained the last injury, or that to both great toes, Dr. Stumbo examined his toes, when he found both of them dislocated, with enlarged joints. The doctor amputated both of them behind the large bone. They were then crooked, but the doctor was

unable to determine "whether it was a congenital deformity or not."

Dr. Stirgill examined, on two different occasions, Reffett's feet, once when alone and on the other occasion in the presence of Dr. Clay. At the time he examined them in the presence of Dr. Clay, "his toes were turned in a cross-wise position, dislocated, and from the joints he had a fistula, discharging pus."

Dr. Stirgill was asked:

"Q. Was this examination (the one made in the absence of Dr. Clay) previous to May 6, 1930, when he claims to have sustained the injury for which he was suing the defendant? A. Well, I don't know; I treated him for this toe on May 24th.

"Q. Did he also give you a history of having hurt or mashed these toes, and they had always been turned that way? A. Yes, sir.

"Q. Now doctor, when this man reported on May 24th, claiming to have mashed the toes while working for the Standard Elkhorn Coal Co., state whether or not there was any difference in the condition at that time, and at the first time you examined him. A. He came to my house, I had gone home. I live just out from the tipple and he said he had dropped a block of coal on his toe. I took his shoe off and found the toe was much inflamed and discharging pus, and there was pus under the skin around this joint. It covered a place of probably two inches under the skin. That is, the skin was all dead around the end, and the pus was just under the skin, not deep in the tissue except at the joint."

It must be noted that Dr. Stirgill by the above question was requested to state "whether or not there was any difference in the condition at that time (May 24th) and at the first time (prior to May 6th," The doctor did not answer the question, and, so far as his testimony is concerned, we are without information as to what his answer would be if answered by him. The doctor was further asked:

"Q. Did the condition you found there indicate a recent or prior injury? A. It was indicating an old sore, chronic."

"Q. State whether or not this trouble with these toes was due to an old sore or chronic injury sustained

years ago, or was due to a recent injury. A. It was our opinion, the first time we examined him, that he had some necrosis or dead bone, which was causing the discharge of the joint."

"A. I did not see but one toe at that time, as he only complained of one toe.

The pus had "spewed" out when he examined him on May 24th. He only complained of one toe. He was asked this question:

"Q. On that occasion did he state to you that the block of coal had fallen on both of his toes or just one of them? A. Just one, at that time."

While Dr. Stirgill in answer to a leading question is made to state that he examined Reffett before May 6th, in answer to the same question repeated, his statement is, "Well, I don't know." It is apparent that he was relying on his memory and not on any record made by him at the time of the first examination, showing the date thereof. The undisputed testimony of Reffett is that on the same day he sustained the injury he went to Dr. Stirgill and exhibited his toe or toes, when the doctor "let a little corruption out of them and bound them up, and put some medicine on them." Not only is the testimony of Reffett consistent with that of Dr. Stirgill, but it is abundantly corroborated by the testimony of his fellow workmen and neighbors. The testimony of Dr. Stirgill is the basis of the argument of the coal company that Reffett was afflicted with a pre-existing disease at the time he sustained the injury for which compensation was awarded him. It was within the province of the board to determine from Reffett's testimony, corroborated by the testimony of his fellow workmen and neighbors, when considered in connection with the conflicting answers of Dr. Stirgill to the same question bearing on the same topic, whether his two great toes were sound before he received the injury for which the compensation was awarded. The credibility or weight of the testimony of Dr. Stirgill respecting his examination of the toes of Reffett prior to May 6th was entirely within the discretion of the board. Howard v. Louisville Railway Company (Ky.) 105 S. W. 932, 32 Ky. Law Rep. 309.

Its findings as to the facts is conclusive. The evidence fully authorized the language of the award,

finding Reffett's injury was in no wise attributable to a pre-existing disease, but solely to the falling of the coal upon his feet. It is true section 4933, Ky. Statutes requires the board to make a finding wherein it must state the percentage of disability resulting from pre-existing disease and that resulting from the injury for which compensation is allowed. The requirement of this section is mandatory. Jones v. Davis, 246 Ky. 293, 54 S. W. (2d) 681, and cases cited.

The facts fully authorized and justified the conclusion of the board that prior to the injury for which Reffett sought compensation he had no pre-existing injury or disease of his toes. The award of the board sufficiently states its finding as to pre-existing disease. If not by exact words, it clearly by implication fixed the result of the injury to his toes as the sole cause of his disability, and that no part thereof was attributable to a pre-existing disease. Jones v. Davis, 246 Ky. 293, 54 S. W. (2d) 681.

It is our view that the testimony of Dr. Stirgill and of Dr. Clay, upon which the coal company so confidently and persistently relies as the basis of its sole ground of reversal, when considered in the light of itself, as well as the evidence in behalf of Reffett, does not show a pre-existing disease of the toes at the time he sustained the injury for which compensation was awarded him, and that the board in its finding and determining the compensation of Reffett did not err in either one of the particulars now urged by the company.

The judgment of the circuit court is in harmony with our views. It is therefore affirmed.