# Aden Mining Co. et al v. Hall.

### (Decided Dec. 12, 1933.)

GAVIN H. COCHRAN and ROBERT F. VAUGHAN for appellants.

M. C. REDWINE and S. S. WILLIS for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

The Aden Mining Company and Green Hall, its employee, were working under the Workmen's Compensation Act (Ky. Stats. sec. 4880 et seq.). On October 24, 1930, he was bruised on the left side, and one of his ribs was broken by falling slate. About 30 days later he went back to work, suffered a strain, and was unable to continue work. Thereafter he filed two applications for adjustment of claim, one for the injury occurring on October 24, 1930, and the other a permanent and total disablement by reason of a bad heart caused from straining and lifting heavy timber on November 24, 1930. Hall died on April 2, 1931, and his dependent widow, Catherine Hall, then filed an application for adjustment of claim for his death, which she claimed was caused by the injury of October 24 and November 24, 1930. After hearing the evidence, the board awarded compensation for temporary total disability of one month's duration on account of the accident of October 24, 1930, but denied the widow compensation for Hall's

death. On petition for review in the Carter circuit court, the court remanded the case to the Workmen's Compensation Board, with directions to set aside the award, "to ascertain and apportion the amount contributed to the death of Green Hall by the accidental injury, and the amount contributed thereto by the pre-existing disease," and to make an award conforming to section 4880, Kentucky Statutes. From that judgment this appeal is prosecuted.

On the hearing before the board there was evidence that Hall was able to do heavy work prior to the first accident. Dr. John A. Snowden deposed that he examined Hall on March 2, 1931. He was then suffering from heart leak. Hall gave him a history of the case, showing that he had been doing manual labor, but since suffering the injury had not been able to work. From this history he was of the opinion that the heart trouble from which Hall was suffering could have been brought on by a lift or strain. In his opinion, if Hall was able to do average work about a mine, and claimed to have lifted a log and strained himself, that would be one of the causes of his leaking heart. He did not find any evidence of traumatism, but would say from the history of the case that the condition of his heart was a traumatic injury. Dr. H. R. Henry also examined Hall on March 2, 1931, and diagnosed his case as mitral regurgitation, with dilation of the heart. At that time he was permanently disabled. The history he got from Hall was that on November 24 he lifted a heavy timber, which he had to release, and fell to the ground. Since that time he had not been able to work. If Hall was able to do an average day's work in a clay mine, the strain of lifting the log would probably cause a leakage of the heart. He found nothing else to which he could attribute the heart condition other than the strain or lift. Eliminating the history of the case, he found no evidence of traumatic injury. Dr. J. M. Rose testified that Hall came to him on October 30, 1930, and had a green stick fracture of his rib in his left side. He saw Hall 8 or 10 weeks later. At that time he was a very sick man, and was suffering from mitral regurgitation. In his history of what happened, Hall stated that he had gotten a strain from lifting. His condition then was an organic lesion of the heart and calculated to produce death. In his opinion, the injury of which Hall

complained was not calculated to produce the condition in which he found him. It might aggravate it, but did not think it caused it. It might aggravate it, and cause his heart to suddenly dilate and drop dead. A man might lift hard enough to stretch or dilate the heart. Ordinarily leaks are infectious, not injury. Dr. Wales S. Brown attended Hall along in November, 1930. At that time he was suffering with mitral regurgitation, and was permanently and totally disabled. Hall told him that his condition was caused by lifting a timber. In his opinion his condition could have been caused by overexertion. It could have been the result of a strain as well as other causes. He did not find other causes calculated to bring on the heart disease. Probably Hall did have pyorrhea. Hall's condition was bad when he came to see him, but he did not know how long he had been that way, but it had been of long standing. It would be a matter of a few months before he could get into that condition. His condition could have been the result of a pre-existing disease.

Dr. H. T. Sparks examined Hall on December 1, 1930. At that time he was suffering from mitral lesion of the heart with hypertrophy, and his heart condition was of long standing, and could not have been developed in a short time. He had a number of infected teeth and extensive pyorrhea, and, if they had existed prior to his heart condition, they could have been the cause of it. Mitral regurgitation was caused by infection, and could not have been caused by traumatism unless the traumatic injury became infected. Hall's condition could not have been the result of the injury to his left side sustained on October 24, 1930. Having a heart condition such as Green Hall had, in all probability it could have been made worse by a severe strain, but his subsequent death was due to pre-existing conditions, probably hastened by the strain. At the time he saw Hall he was seriously ill with heart disease and smothering. His condition was not caused by a sudden strain, but developed over a long period of time. There were no symptoms of any injury that Hall had received at the time he examined him. Leakage of the heart was not very often caused by exertion or heavy lift. He took it that Hall's heart condition had not been good for years, and it was not guesswork that his condition was due to infection. Dr. Wilbur Helmus, in answer to numerous

hypothetical questions, expressed the opinion that neither the injury of October 24, 1930, nor the strain from lifting on November 24, 1930, could have been the proximate cause of Hall's death. He had seen numerous patients in advanced stages of heart disease who were unaware of their exact condition and who could carry on their usual daily work or manual labor. Pyorrheal conditions constitute a cause for both heart and kidney trouble. He was of the opinion that the alleged injuries were coincident, and not in any way contributory to the man's death, which was due to a diseased heart. He would say that occasionally a leakage of the heart can be caused by exertion, in which case it is not persistent and permanent, but in most cases leakage of the heart is due to organic lesions, in which case they are permanent. In his opinion, Hall's heart condition was entirely the result of infection.

It is the rule that, where the applicable law depends on the Workmen's Compensation Board's determination on disputed facts, and no finding of facts is made, the case will be remanded to the board for such finding. Stokes v. Black Hawk Coal Co.'s Receiver et al., 242 Ky. 849, 47 S. W. (2d) 740. It is also the rule that, where the board makes no finding of fact, and the disability is traceable partly to pre-existing disease and partly to accidental injury, the board should ascertain the facts and apportion the award accordingly. Broughton's Adm'r v. Congleton Lumber Co. et al., 235 Ky. 534, 31 S. W. (2d) 903. Here the board, after an exhaustive review of the evidence, did make a separate finding of facts and law. Its finding of facts is as follows:

"The Board is unable to find, without speculation or conjecture, that the decedent died as a direct or natural result of a traumatic injury by accident, but is of the opinion that the death was the result of a pre-existing disease, which disease was not the natural or direct result of a traumatic injury by accident."

Under the statute, personal injury by accident does not include disease, except where the disease is the natural and direct result of a traumatic injury by accident. Kentucky Statutes, sec. 4880. Here the board found that Hall's death was the result of a pre-existing

disease, and that this disease was not the natural or direct result of the traumatic injury by accident. In our opinion, this was in effect a finding that Hall's death resulted solely from the pre-existing disease, and that the accident did not cause or contribute to the disease. Standard Elkhorn Coal Co. v. Reffett et al., 248 Ky. 487, 58 S. W. (2d) 619. In reaching this conclusion on the facts, the board considered all the evidence. On the one hand were the opinions of several reputable physicians based on the history of the case as given by Hall that the condition of his heart was due to his injuries. On the other hand, other physicians equally reputable expressed the opinion that the condition of Hall's heart was of long standing, was due to infection, and could not have been caused by either the injury of October 24, 1930, or the strain of November 24, 1930. As the case is one where the board did not ignore uncontradicted evidence, but based its findings of fact on competent evidence, its findings are conclusive. Madden v. Black Mountain Corporation, 238 Ky. 53, 36 S. W. (2d) 848. It follows that the situation was not such as to require an apportionment of the award, and that the circuit court erred in remanding the case for that purpose.

Judgment reversed, and cause remanded, with directions to affirm the award of the board.