## Fannin et al. v. American Rolling Mill Co. et al.

Oct. 25, 1940.

Watt M. Prichard, Judge.

Davis M. Howerton for appellants.
Caldwell & Gray for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On and for sometime prior to February 4, 1937,

George J. Fannin was an employe of the appellee and one of the defendants below, American Rolling Mill Company, at its plant located in Ashland, Kentucky. On the day indicated at about 3 o'clock P. M., and while Fannin was engaged in his labor for his employer, he instantly fell dead. He left surviving him a widow and some infant children. They later made application to the Workmen's Compensation Board for an appropriate award to them as dependents of their deceased husband and father. After preparation the application was submitted to a referee who dismissed it on the ground, as stated in his opinion: "George Fannin died from a diseased heart condition which had no connection, direct or indirect, with his employment by this defendant and, therefore, compensation must be denied in this case to the plaintiff. * * * That George Fannin's death was caused by an acute dilation of the heart, the result of disease and not traumatic injury, and that George Fannin's death did not result from an accidental injury or accident arising out of and in the course of his employment."

Such findings were preceded by a short review of the testimony from which the referee concluded that there was no proof authorizing the conclusion that the deceased sustained an accident as an outgrowth of his work, although it was and is contended by counsel for applicants "that the work was so extremely heavy and the heat so oppressive at the place where deceased was working that overexertion caused the heart failure." The referee answered that contention by saying: "It is our opinion that this is merely pure speculation and conjecture, and there is nothing in the record that would enable us to give any weight to that inference." Applicants asked and obtained a review of that ruling before the full Board, and an opinion was delivered by its chairman in which some former opinions of this court were discussed and the facts in them compared with the facts of this case, with the conclusion that: "The testimony failed to sustain the plaintiff's only possible, tenable theory for holding the defendant liable under the Workmen's Compensation Act in this marginal case, for if we were to hold for the plaintiffs upon the facts disclosed in this case, we would inferentially declare any employer of labor a general insurer of his employees while in the course of their employment." The opinion

of the referee was, therefore, affirmed. A petition for a review of that finding was timely filed in the Boyd circuit court and at the hearing therein the findings of the Board and its referee were affirmed and the petition for review was accordingly dismissed. Complaining of that judgment the applicants prosecute this appeal.

In this court their counsel expressly abandons the theory contended for before the Board and the court below to the effect that "The whole cause of Fannin's death was over exertion and that he had no weak heart." In receding from that all-sweeping contention it is here insisted "that, by inference at least there is sufficient evidence to support the Board's finding that he did have a weak heart," and because of which "we seriously contend that the record presents a case of contributory causes—disease and injury—and for which latter contributory cause there is liability in part for compensation and that the Board erred in not apportioning the award accordingly." We, therefore, have a case where its determination rests exclusively upon the existence or non-existence (according to counsel's admission) of only one fact, i. e., whether or not the work in which the deceased employe was engaged had any contributing effect to his untimely and sudden demise, even though we should eliminate the fact of the absence of traumatic injury for which there was no proof.

A brief summary of the facts are: As a servant of his master, Fannin worked in and around the power plant of his employer engaged mostly, if not entirely, in looking after its boilers necessary in producing steam power with which its machinery operated. On the day prior to his death he worked inside of one of them cleaning out dirt and debis that had accumulated in them from the 1937 flood, and also performed similar work on the day of his death up to about 10 o'clock A. M., when he began the duties of fireman for one of the boilers with his working companion, a Mr. Eades, who was firing an adjoining boiler, there being five of them clustered together and located outside of an enclosed building. The coal that Fannin and Eades were required to put into the boilers was rolled to the spot just in front by another servant and it was the duty of Fannin and Eades to put the coal thus placed near the front door of the boiler into its fire box, which service was performed by a rather small shovel. They could not, according to

the proof, contain enough coal to produce a strain upon the one handling the shovel. After the boiler was thus fueled for the time being Fannin and his companion rested for about twenty-five minutes when they would repeat the operation. Eades had finished supplying the boiler he fed and had momentarily stepped aside to a water pump—presumptively to get a drink of water— and upon his return he found the dead body of Fannin upon the ground near the coal pile in front of the boiler he was feeding, and from which he was taking coal, with his face down and his shovel stuck into the coal pile preparatory to lifting its load and putting it in the boiler. Such are the only facts proven with reference to what occurred at the immediate time.

There was no evidence adduced to show the existence of any previous heart trouble, except the fact that Fannin was more or less frequently afflicted with what he termed the accumulation of gas on his stomach, and which he treated with doses of ordinary soda, a supply of which he ordinarily carried with him and which he had on the fatal occasion. He had talked with Eades some short while before his demise upon that subject, but no one claimed that he ever suffered with pains of the heart, unless he was mistaken in diagnosing his trouble as the accumulation of gas on his stomach and which some of the physician witnesses said may have been caused by an abnormal condition of his heart. But however that may be, the question still remains whether or not the work he was performing at the time was an active contributing agency in bringing about his sudden death so as to make that occurrence "traceable partly to pre-existing disease and partly to accidental injury?" If the affirmative is true, then the Board was required to apportion the proper award accordingly by attributing the loss between the contributing effect of the pre-existing disease, and the contributing effect produced by the work, when the results of the latter are of the nature and kind that are compensable under our Compensation Statute, Kentucky Statutes, Section 4880 et seq. It was and is now contended that the labor performed by Fannin on the day before his death—and in the early forenoon of that same day in cleaning out a boiler or boilers for his master—was extremely hard work; but even that contention is based not so much on the testimony heard at the hearing as from the fact that

when Fannin returned home on the evening preceding his death his wife testified that he appeared to be tired and that some, if not all, of his clothing was wet or at least damp. The proof, however, showed that the accumulations in the boiler which Fannin was taking out of it were damp and more or less wet, and the fact that his clothing was in like condition has but little if any bearing upon the ultimate fact of the strenuousness of the labor.

Nothing appears in the entire record to show the least particle of exhaustion experienced, complained of, or otherwise which Fannin experienced on the preceding, or the day of his death, and all of the proof shows that the work in which he was engaged at the time was not strenuous or otherwise calculated to produce any heart attack, and the physician witnesses also said that it would not necessarily contribute to his death even though his heart was previously affected. They, of course, said that it might do so and that it was possible for the labor which he was then performing to excite the diseased condition of the heart in such a manner as to cause the rupture of a blood vessel somewhere in his anatomy that produced his death. That testimony is relied on as conclusively showing that the labor did contribute to Fannin's death in such a manner as to require the Board to allot compensation for the proportionate part that such contribution made in producing the fatal result.

The cases relied on by counsel for appellants are Broughton's Adm'r v. Congleton Lumber Co., 235 Ky. 534, 31 S. W. (2d) 903; Fordson Coal Company v. Bledsoe, 236 Ky. 409, 33 S. W. (2d) 302, and Aden Mining Company v. Hall, 252 Ky. 168, 66 S. W. (2d) 41; Avery & Sons v. Carter, 205 Ky. 548, 266 S. W. 50. In them, and in others cited in them, the Board appraised the testimony before it in a manner to arrive at different conclusions. In some of them it found that the work in which the servant was engaged contributed to the prior existing disease, whilst in others it found otherwise and in each of them we affirmed such findings when there was any evidence to sustain them, as we are required to do by the statute, and also by all of the opinions we have written on the subject since the statute was passed. Therefore, it might be true (but which question is not determined) that if the Board had made a finding in this

case that the labor being performed by Fannin at the time he was stricken contributed to the fatal result—although he may have been suffering with a heart affliction prior to that time—we would, following our prior opinions, be compelled to approve that finding, notwithstanding it might not be supported by a preponderance of the evidence.

We have, however, the reverse of that condition in this case, since the Board found from the evidence—and which we are convinced was supported by a preponderance of the proof—that the labor in which Fannin was engaged at the time was not a contributing cause of his death; and we have not been pointed to any reason why we should depart from the statutory rule as enunciated in our numerous opinions when the Board found the facts to be such as not to support claimants' right to compensation because the servant's death was the result of prior existing disease and that it did not result "from accidental injury or accident arising out of and in the course of his employment."

Two comparatively late cases dealing with a similar situation are Coleman Mining Company v. Wicks, 213 Ky. 134, 280 S. W. 936, and Wallins Creek Collieries Company v. Williams, 211 Ky. 200, 277 S. W. 234. In the Wicks case [213 Ky. 134, 280 S. W. 937], there was an autopsy which developed "a ruptured blood vessel in the brain" and it was thoroughly proven that the character of strenuous labor and effort being performed by the servant was calculated to bring about such a result, and especially so where the servant was suffering from some affliction of the heart. In that case also a traumatic injury was proven which was the ruptured blood vessel on the brain, but no such evidence was introduced in this case.

It is, however, insisted by counsel for appellants that the findings of the referee, which the full Board affirmed, were not sufficient to exclude the contributing effect, if any, that the labor which Fannin was performing may have had in producing the fatal result, and that the judgment should be reversed with directions to refer the case back to the Board for an express finding on that issue. However, we do not interpret the orders made by both the referee and the Board as possessing the omissions contended for. In the Aden case, supra [252 Ky.

168, 66 S. W. (2d) 43], the finding of the Board was: "The Board is unable to find, without speculation or conjecture, that the decedent died as a direct or natural result of a traumatic injury by accident, but is of the opinion that the death was the result of a pre-existing disease, which disease was not the natural or direct result of a traumatic injury by accident." In holding it to be sufficient without further specification, we said: "Here the board found that Hall's death was the result of a pre-existing disease, and that this disease was not the natural or direct result of the traumatic injury by accident. In our opinion, this was in effect a finding that Hall's death resulted solely from the pre-existing disease, and that the accident did not cause or contribute to the disease. Standard Elkhorn Coal Co. v. Reffett et al., 248 Ky. 487, 58 S. W. (2d) 619." The statement, supra, of the Board's finding in this case is, as we conclude, equally as broad, if not more so, than was contained in the Aden case, and following the interpretation therein made we conclude that the contention of counsel now under consideration can not be sustained.

Briefs for both sides indulge in the discussion and citation of cases involving essential reqr'sites to support appellant's right to compensation, among which is the scope and meaning of the word "traumatic" as used in the statute, and other related questions, all of which we might concede should be answered favorably to the applicants, but when done their right to compensation would not be enhanced, since the whole case, as we said at the beginning, is determinable upon the question as to whether or not the accident (if any) which befell Fanning arose "out of and in the course of his employment." The Board found that it did not so arise to any extent. There was evidence to sustain that finding, and under the statute, supra, and our many opinions following it, we are without authority to hold otherwise.

Wherefore, for the reasons stated, the judgment is affirmed.