## Department of Highways v. Giles.

Dec. 20, 1940.

Flem D. Sampson, Judge.

Hubert Meredith, Attorney General, and William F. Neill, Assistant Attorney General, for appellant.

Pope & Upton for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Appellee, for more than three years prior to and on July 17, 1937, was night watchman at appellant's garage in Williamsburg. In the early morning of the date stated he became ill and had to be assisted to his home. He worked for only two or three nights thereafter, in the month of September. His complaint was that asthmatic trouble, induced by breathing noxious vapors and coal dust, rendered him unable to labor. Parties were operating and working under the Compensation Act, Kentucky Statutes, Section 4880 et seq. Giles filed application for award, based on the ground that he was totally and permanently disabled.

The garage, where he was night watchman, was 100x80 feet, within which was a boiler room 18x16 feet, practically air tight, save for one window and a door which had a slight air space at the bottom. This boiler

room was used at times, mostly in the daytime, sometimes at night, for painting motor vehicles, road and other signs, the painting being done by means of a spray gun. There were also kept stored in the boiler room some paints, turpentine oils, and at times there was a collection of oil occasioned by the drainage of crank cases, and some coal dust.

Giles was in the habit of using this boiler room, apparently for resting purposes and during cold weather for warmth. He admits that he selected this room entirely on his own volition, his duties not requiring watching of this portion of the building.

There was such proof introduced before the board which showed that appellee, then past 70 years of age, was suffering with asthma, described by doctors as having reached the stage called "emphysema," who in a measure agreed that it was incurable. They, four or five in number, testified in answer to a hypothetical question, though they had examined Giles and obtained some history, that his condition was caused, or might have been caused by continuously breathing the fumes from the paints, turpentine and oils, though it is not shown that Giles was present when painting was done, or from coal dust, which was not shown to have existed in quantity. Some of these doctors thought he was totally and permanently disabled.

On the other hand, two doctors, testifying for appellant, were clearly of the opinion that the presence of vapors or fumes from the elements described, would not and did not produce the condition in which they found Giles. It was their confirmed opinion that the condition which would or might result later in asthma, was hereditary. They did agree that irritation, occasioned from breathing of the fumes described, would serve to irritate and accentuate an already existing disease or condition. This theory was disputed by appellee's physicians.

It was shown by appellee, and otherwise, that employees who did the painting, one at least for two or more years, had not suffered untoward results, though it is shown that at times the painter used a respirator. The physicians who testified as to extent of disability were not in accord; while agreeing that when the attacks of asthma came on, to an extent, no work could be

performed, they were of opinion that except on such occasions appellee would be enabled to and could perform the duties of night watchman, or perhaps other light labor. All the physicians agreed that pollen from flowers or weeds, house dust, (a most common cause) or any like substance would produce irritation; some claiming that the inhalation would cause the disease.

Appellee had been at a remote date treated for blood poisoning. He says he began having the "smothering spells" four months prior to the date mentioned in July, mostly taking effect while he was walking to and from work. He had detected the vaporous odors from the time he began work, but did not realize the breathing of them would or could cause the trouble until he was informed by physicians. He had never heard of the existence of asthma in the family of his father or grandfather.

Dr. Smith was of the opinion that Giles' trouble was caused by inhalation of the fumes; this was based on examination and history told by patient, and the assumption that there had not existed asthmatic condition in the line of direct ancestry. Dr. Moss "thought" the fumes might have caused the condition, since it was the prevalent one of some eight or ten moving causes. Dr. Siler was merely asked whether the inhalation of such vapors as are mentioned, and "other irritating substance" would cause the condition, and his answer was: "It may produce it in some people." Dr. Triplett, after examination, thought Giles' disability was caused by inhalation of "fumes from paint and maybe carbon monoxide." There was no attempt to show presence of carbon monoxide.

The foregoing was substantially the proof introduced upon which the board rejected Giles' claim for compensation, in doing which it separated its finding of law and facts, setting out the latter in detail, and holding that under the law he was not entitled to award, because his disability was not caused by the vapors and fumes from the fluids named. They also found that his condition, if attributable, was brought about by his voluntary acts, not necessary in the course of employment. Giles appealed for review.

The trial court reviewed the evidence, and concluded that both parties agreed to the fact that appli-

cant was totally disabled, and that asthma may be produced by "such an experience as the plaintiff passed through." The basis of the judgment was that it was not shown by appellant that the forbears of Giles had been afflicted with asthma. The court concluded that the board's finding of facts was contrary to the evidence, and remanded the case with specific directions to award applicant a sum based on total and permanent disability, and his earnings at the time of his injury, as provided by law.

From this judgment an appeal has been prosecuted, and at the outset we are met with a motion to dismiss the appeal, the contention being that the order of the circuit court was interlocutory and not final, and premature in the absence of a finding by the board, citing Green River Fuel Co. v. Sutton, 260 Ky. 288, 84 S. W. (2d) 79.

We need spend little time on this contention, since the identical question has been determined contrary to appellee's argument, in Inland Steel Company v. Newsome, 281 Ky. 681, 136 S. W. (2d) 1077, 1079, decided since filing of appellee's brief. In that case we called attention to the fact that we had explained the Sutton case in Searcy v. Three Point Coal Co., 280 Ky. 683, 134 S. W. (2d) 228, and following the ruling in the latter case, held:

"* * * where the order of remand conferred upon the Board the power to make a different award from that appealed from, the party in whose favor the Board had found was thereby deprived of a vested right. Since the order of remand in the case at bar, by directing the Board to consider the depositions referred to and to hear further proof if it deemed it necessary so to do, impliedly conferred upon the Board the power to make an award in favor of the appellee and thus deprive the appellant of a vested right, this Court is of the opinion that the order of the Circuit Court was a final and appealable order."

Here we have a much stronger case, since there was an order not directing reconsideration but a plain mandate as to what award order the board should enter upon remand. There can be no doubt here of a deprivation of a vested right.

As indicative of its conclusive effect, it is shown by matters outside the record that the board shortly after being advised of the circuit court's ruling, followed the mandate and made award. These matters appear only in brief in furtherance of the argument by appellee that the circuit court's order was interlocutory. On the other hand, appellant points to the fact as indicating that the order was final. Thus we have on the face of extrinsic papers an awkward situation, but which we cannot consider, since there is no appeal pending as far as we know dealing with the award.

We have not been assisted to a great extent by briefs on the merits of the case. However, we find that to all intents and purposes, the Newsome case is persuasive on the merits. We said:

"It must be borne in mind that neither this Court nor the Circuit Court was authorized to determine the weight of the testimony. So far as questions of fact are concerned, the sole function of the courts in workmen's compensation cases is to ascertain whether the record discloses any competent evidence of probative value which supports the fact findings of the Board."

We found in the Newsome case that the testimony supported the finding of the board, that he had not died of traumatic injury. We need not undertake a recitation of the facts merely for comparative purposes. We observe that the ultimate question was determined on expert or medical testimony, and testimony as to conditions shown after death. The board in that case measured and weighed the medical testimony.

The general rule is that "it is only where there is no contrariety of evidence or disputed facts on which the board's finding is based that finding is reviewable by the courts." Lawrence Leather Co. v. Barnhill, 249 Ky. 437, 438, 61 S. W. (2d) 1, 4; Bates & Rogers Construction Co. v. Allen, 183 Ky. 815, 210 S. W. 467, and in which we held that an employee seeking compensation must establish that the complained of cause was the proximate cause.

In Woodford Oil & Gas Co. v. Creech, 250 Ky. 307, 62 S. W. (2d) 1031, 1033, we upheld the board's refusal to reopen a case, in which the board heard admitted-

ly conflicting testimony. We cited Allburn Coal Corp. **v.** Wilson, 222 Ky. 740, 2 S. W. (2d) 365, and said:

"The present case was heard by the board upon conflicting evidence before it and its finding, therefore, comes within the well settled rule that 'if there is any evidence of a competent and relevant nature having the fitness to induce conviction to sustain the finding of fact of the board, such finding is final.' Trout v. Fordson Coal Co., 225 Ky. 372, 9 S. W. (2d) 109, 110."

While the lower court did not comment, there was also a finding by the board that the injury did not arise out of and in the course of employment. There was evidence to support and sustain such conclusion by the board. Fannin v. American Rolling Mill Co., 284 Ky. 188, 144 S. W. (2d) 228.

In the case at bar the controversy was whether or not the breathing of the fumes from the oils and paints was the proximate cause of his injury, and whether or not the injury, if any, arose in the course of his employment. On one point the evidence was conflicting, but not so on the other. The finding of facts by the board was based on competent and relevant evidence, and this being true, it follows that the court of first instance erred in remanding the case.

Judgment reversed with directions to set aside the remanding order, and to dismiss the application for review.