## Ratliff et al. v. Cubbage et al.

February 23, 1951.

E. D. Stephenson, Judge.

V. R. Bentley, for appellant.

Clyde R. Levi, for appellee.

Stanley, Commissioner—Affirming.

The sole question is whether or not the Workmen's Compensation Board had any evidence upon which to base its finding that the death of Dick Ratliff from a heart attack was not the result of an industrial accident. The circuit court affirmed the finding, expressing the view, however, that as an original determination the court would have found otherwise.

The employee was seriously injured in the mine of the appellee, Caudill-Ward Coal Co., by a run-away train of cars on August 26, 1946, twenty-two months before his sudden death on a street of Elkhorn City on July 2, 1948. He had suffered a double fracture of one leg and the laceration of the other and the destruction of an artificial foot. He suffered such severe shock that it was necessary to postpone surgical operations for eight or ten days. The man was of temperate habits, of good health and with no symptoms of heart disease ever having appeared prior to his falling dead. Compensation benefits had been paid Ratliff from the beginning but later a difference arose as to the degree of permanent disability, and the case was opened up for further proof upon that issue. He died before a decision was rendered. After his death, the claim was revived by his widow and child.

The Board confirmed the finding of its referee that compensation for total permanent disability should be allowed to the date of the employee's death but nothing for the death as having any causal relation to the accident. The Board rejected the finding of the referee that compensation of $280 should be allowed for the loss of the employee's artificial foot. He had suffered the loss of his foot above the ankle in 1929, for which injuries compensation had been paid. The Board also declined to increase compensation because of an alleged failure of the employer to install certain safety devices on the cars which caused the injuries. As stated, the appeal does not involve any question but that of casual death, and liability for the value of the artificial foot.

In weighing the evidence, the Board was guided by the rule that the burden was upon the claimant to show that the employee's death was the natural or direct result of the accident or of a disease directly caused by the accident. Fannin v. American Rolling Mill Co., 284 Ky. 188, 144 S. W. 2d 228; Wallins Creek Collieries Co. v. Williams, 211 Ky. 200, 277 S. W. 234; Streipe v. Hubbuch Bros. & Wellendorf, 233 Ky. 194, 25 S. W. 2d 358; Aden Mining Co. v. Hall, 252 Ky. 168, 66 S. W. 2d 41. It was recognized that whether death is the proximate result of an injury can ordinarily be established only by the testimony of physicians and surgeons deemed to be experts qualified to express such professional opinions; however, that such opinions are not conclusive and that uncontradicted sequences of events may be entitled to greater weight. Ellis v. Litteral, 296 Ky. 287, 176 S.W.2d 883.

The sum and substance of the testimony of several doctors (none of whom is a heart specialist) is that the sudden death of the employee *could* have been caused or aggravated by the shock to his nervous system caused by his harrowing experiences in the accident. The opinions are based upon the conclusion that the consequential sedentary life following an active career had caused an increase in the man's weight from 170 to 200 pounds. As Dr. Henderson expressed it, "A clincial condition of this type could be expected to carry with it a certain amount of malcordial degeneration and most likely fatty in origin. People carrying a fatty malcordial heart are frequent suspects of sudden, fatal heart attacks." A shorter explanation was that one of the symptoms of what laymen call a "fatty heart" is "sudden picking up of weight." Although some of these doctors had examined the man within two months of his death, the most they could say was that he might then have had heart trouble without it having been detected by them. There is also the fact that the employee had died suddenly while totally and permanently disabled within the terms of the Compensation Act, although it appears that he had been able to do certain limited work.

On the other side of the issue, the Board had the fact that before and during the period of nearly two years since the accident there had been no complaint or symptom of heart trouble. The deceased's personal

doctor in his home town of Praise saw his body before it was removed from the place where he fell dead. He thought Ratliff had suffered a sudden heart attack or a hemorrhage of the brain though no autopsy was performed to verify his conclusion. Dr. Newsome, who knew Ratliff intimately, saw him just a moment before he breathed his last. He testified he had died "of heart failure; acute dilation of the heart." Dr. Vernon and Dr. Osborne, surgeons at Pikeville, had testified concerning the degree of Ratliff's disability. Upon a retaking of their depositions after his death, both testified they found no relationship between the injuries sustained and his death by heart attack. They did not attribute it to those injuries.

It seems to us that there was ample evidence for the finding of the Board. The case is not like some that have come before us where professional or technical testimony was outweighed by realistic, factual sequences or consistent and continuous effects. In the present case the developments and factual, practical conditions themselves are consistent with the professional opinions that there was no causal relationship between the accident and the death. Indeed, over against that evidence the Board had no more than opinions of a possibility. The judgment confirming the finding of the Board is sustained by many cases, among which may be noted: Wallins Creek Collieries Co. v. Williams, 211 Ky. 200, 277 S. W. 234; Furnace Coal Mining Co. v. Carroll, 212 Ky. 1, 278 S. W. 171; Aden Mining Co. v. Hall, 252 Ky. 168, 66 S. W. 2d 41; Agsten v. Brown-Williamson Tobacco Co., 272 Ky. 20, 113 S. W. 2d 829; Inland Steel Co. v. Newsome, 281 Ky. 681, 136 S. W. 2d 1077.

We think the Board properly denied recovery of the value of the employee's artificial foot destroyed in the accident. The statute current at that time made no provisions for the furnishing of such an artificial member of the body as part of the compensation. An amendment of 1948 does provide that the employer "shall initially furnish" such an instrumentality. KRS 342.020. Whether or not this would apply in the very unusual situation we have here need not be decided. See Pacific Indemnity Co. v. Industrial Accident Commission, 215 Cal. 461, 11 P. 2d 1, 82 A. L. R. 1170 and annotations to

the effect that loss of an artificial limb is a property loss and is not recoverable as compensation for personal injuries.

The judgment is affirmed.