**GENERAL REFRACTORIES CO., Inc., et al., Appellant,**

v.

**Mrs. Minnie COLLINS, Appellee.**

Court of Appeals of Kentucky.

Oct. 29, 1954.

Boehl, Stopher, Kilgarriff, Graves & Deindoerfer, Louisville, Thomas D. Theobald, Jr., Grayson, for appellant.

Jesse K. Lewis, Lexington, W. Hubert Counts, Olive Hill, for appellee.

SIMS, Justice.

Jesse Collins was an employee of the General Refractories Company and both had accepted the provisions of the Workmen's Compensation Act. It is claimed by his widow, Mrs. Minnie Collins, that while he and two other workmen were moving or loading in a truck a crate of fire brick weighing between 350 and 450 pounds, Mr. Collins suffered an injury to his back which resulted in his death within about three weeks thereafter. A referee of the Workmen's Compensation Board (hereinafter referred to as the Board) denied compensation on the ground that Collins' death was not the result of the accident, which finding was sustained by the full Board when the claim reached it. On appeal to the Carter Circuit Court it was adjudged the widow was entitled to compensation for the death of her husband, and the Company appealed.

The sole question is to determine from the record whether there is any evidence to support the finding of the Board, since it is the settled rule that if there is any competent evidence of probative value to support the finding of the Board, the courts may not disturb it. Humble v. Liggett & Myers Tobacco Co., Ky., 239 S.W.2d 469.

The evidence for Mrs. Collins shows her husband was 59 years of age and a very large and exceptionally strong man. There is some confusion in the testimony as to whether his injury occurred on the 15th or 17th day of May, or June, or July 1951, but it is conclusively shown that while he and two other workmen were moving or loading a crate of fire brick, he suffered a sudden injury to his back. Homer Lawhorn, who was working with Collins, testified Collins' back "popped like popping your fingers and he raised up and put his hand on his back, reported it to Mr. Williams, his foreman, who told Collins not to do any more lifting". Mrs. Collins testified her husband was in great pain that night but made himself a rough brace and started back to work the next morning. The foreman testified Collins, after his injury, did nothing but light work, such as making crates and part of the time remained seated. Two or three weeks after being injured Collins went to St. Joseph Hospital in Lexington, and died three days later. The only medical attention he received before entering the hospital was from two chiropractors, neither of whom testified.

On cross-examination Mrs. Collins admitted her husband once in a while, when he worked hard, would have indigestion and would bloat, but "it did not amount to anything and a little soda water was the

end of it". She also said he had suffered from high blood pressure but had gotten over it seven or eight years before his death.

Dr. T. R. Miller, an orthopedic surgeon of Lexington and the only witness called for the Company, testified Mr. Collins was admitted to the hospital July 27th "in a somewhat lethargic condition" which developed into a "frank semi-coma on the 29th and he went rapidly downhill and died on July 30th". The laboratory findings upon Collins' admission to the hospital showed "his red blood count and hemoglobin were somewhat reduced; there was a trace of albumin in the urine and a blood erythronitrogen determination on July 29th was considerably elevated". Several x-ray pictures were made of the patient but they were not clear due to his size and the fact that his condition did not permit him to cooperate.

■ As to what the death certificate showed, Dr. Miller testified "primary cause was given as unknown, with a possible metastatic malignancy as I understand it, generalized malignancy". When asked if there was any causative relationship between the patient's death and his back injury, Dr. Miller replied, "From the course that the patient followed in the hospital and the laboratory findings, I personally don't see any relationship between his back injury and his death".

The trial judge was of the opinion, and counsel vigorously argued in their brief, that Collins was in such serious condition when he entered the hospital the doctor could not make a definite diagnosis as to the cause of his death and "a personal opinion of Dr. Miller is incompetent and of no significance", citing Harlan Wallins Coal Corp. v. Carr, 220 Ky. 785, 295 S.W. 1017; Smith Coal Co. v. Hawkins, 222 Ky. 284, 300 S.W. 609.

In the Carr case [220 Ky. 785, 295 S.W. 1018] the doctor testified, " * * * It was out of the ordinary for a man who had received a hernia to continue to work without reporting to a physician", and we held such

statement was too vague and indefinite for the Board to base a finding that the injured workman had not suffered a hernia. In the Hawkins case [222 Ky. 284, 300 S.W. 610] the doctor testified, " 'I gave most of this disability to his first injury, because I do not see how he could have big disability due from the fracture of the transverse process.' " Following the Carr case, we held this statement was too vague and indefinite to show that any part of the injured employee's then disability was due to the former accident.

We are in full accord with what was written in both of these cases but they have no application to the instant case. Here, Dr. Miller gave the defective condition of Mr. Collins' blood and his urine and while he said the primary cause of the patient's death was unknown, there was a possible general malignancy, and from the course that the patient followed in the hospital and the laboratory findings, "I personally can't see any relationship between such a back injury and his death."

It is argued in appellee's brief Dr. Miller stated no facts to support his opinion that there was no causal relationship between Collins' injury and his death but only gave his personal opinion there was none. However, an examination of the testimony shows appellee is in error, since it is evident from the record this was a professional rather than a personal opinion and was based upon the laboratory findings and the history and the condition of the patient.

Clearly, Dr. Miller's opinion was that of a medical expert based upon the facts he related and his testimony was "something of substance and relevant consequence, and not vague, uncertain, or irrelevant, not carrying the quality of proof or having fitness to induce conviction", and was sufficient to support the Board's finding that Collins' death was not caused by the injury he received in the course of his employment.

■ Appellee argues that where death follows soon after the injury of an able-bodied man, a presumption arises that death was caused by the injury in the absence of

other than conjectural testimony to the contrary, citing Ellis v. Litteral, 296 Ky. 287, 176 S.W.2d 883. We admit there is such a presumption but in the instant case it was overcome by the competent testimony of Dr. Miller, which was not conjectural but which possessed probative value.

This case is vastly different from the Litteral case where the record shows Litteral suffered a severe lick on his back and possibly on his head by a 300 pound gin pole falling a distance of seven or eight feet and knocking him unconscious and fracturing his seventh and eighth thoracic vertebrae. Litteral remained in the hospital 13 days, then was placed in a cast and permitted to return home. He wore the cast for some weeks, and five days after it was removed his doctor agreed the patient might go from Whitesville in Davies County to Salyersville, Ky. He made the trip by bus, starting Saturday with a stop-over in Lexington, where he was ill, and arrived in Salyersville at 1:30 p. m., Sunday. The following week he visited relatives but was ill and spent a good bit of his time lying down. On the Sunday following this he went to an all-day meeting, walked a mile and a half in the sun on a hot day, was taken seriously ill and died within a few days. Two doctors testified Litteral's death was not the result of a sunstroke, although they could not determine the cause of death, while a third doctor testified that Litteral died as a result of a sunstroke. This court held such evidence did not overcome the presumption that this exceptionally strong and able-bodied man died as a result of being struck by the gin pole.

The distinction between the case at bar and the Litteral case is quite evident. Litteral sustained a severe lick to his back and head, while Collins suffered only a strain to his back. Litteral's injury might reasonably be calculated to cause death while a strain to the back is not likely to produce death. Two physicians testified that although they could not say his death resulted from his injury, it did not result from sunstroke. And we held in the circumstances that this testimony supported the finding of the Board that his death was the result of a lick even though a third doctor testified it resulted from sunstroke as there was evidence of probative value to support the Board's finding.

The judgment is reversed with directions that the trial judge dismiss the petiton for review and sustain the finding of the Board.