**Alice M. SALMON, Appellant,**

v.

**ARMCO STEEL CORPORATION et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 11, 1955.

P. H. Vincent, Ashland, John L. Smith, Catlettsburg, for appellant.

Robert T. Caldwell, Caldwell & Robinson, Ashland, for appellees.

MOREMEN, Justice.

Appellant, Alice M. Salmon, filed claim under the workmen's compensation law on account of her husband's death while he was an employee of appellee, Armco Steel Corporation. The referee dismissed appellant's application upon the ground that she had failed to prove that her husband, Everett Salmon, died as a result of an injury by accident. This finding was affirmed upon full board review. The circuit court dismissed the petition for review of the order of the Workmen's Compensation Board.

The principal question on this appeal is whether or not appellant proved an accident under KRS 342.005 which, after limiting liability of employers to accidents arising out of and in the course of employment, provides "that 'personal injury by accident' as herein defined shall not include diseases except where the disease is the natural and direct result of a traumatic injury by accident, nor shall it include the results of a preexisting disease, whether previously disabling or not * * *." We think the question of whether Everett Salmon died as the result of accident may be resolved by a statement of the facts.

On September 2, 1952, Everett Salmon, age 57, reported for work in his capacity as electrical repairman of a plant belonging to Armco Steel Corporation where he had been employed for many years and where his record for continuous service was very good. In the locker room where he changed his clothes he stated that he was not feeling well and expressed the hope that there would not be many breakdowns during the day. Other witnesses testified however that he seemed in good spirits and they did not hear him complain. Later with his helper, Paul Frazier, he began the discharge of his duties which at this time consisted of replacing burnt-out bulbs of electric light standards used for the purpose of illuminating plant property. He mounted a forty-foot pole by means of stirrups which were inserted at regular intervals in the pole. His helper, Frazier, saw him begin his climb but looked away when Salmon reached a point where he was in position to remove the bulb. When he looked back, Salmon was hanging by his safety belt and Frazier thought he had fallen or twisted in his harness. Frazier climbed the pole, shook Salmon, called his name, received no reply, noticed that he did not move and concluded that he was either unconscious or dead. About thirty minutes later, Salmon was removed from his position on the pole and during the interim several persons observed him, some of whom saw a slight movement of the body, others did not.

At first it seems to have been the general assumption that Salmon had been electrocuted and appellant proceeded on this theory for some time even after claim was filed. However this theory was disproved. Appellant now bases her claim upon the supposition that Salmon fell and that his fall resulted in his death.

No witness was produced who saw Salmon at the instant his foot left the stirrup upon which he was standing and he became secured only by his life belt which he had thrown over the stirrup immediately above him. Appellant's argument that he fell is based upon a mark which appears on the shoe introduced as evidence. From this mark we are asked to conclude that Salmon accidentally slipped from his foothold which resulted in the injury that caused his death. The board concluded that it could not properly accept such an assumption and we believe it was correct in assuming this attitude because the proof introduced by the doctors seems to us most adequately to support the conclusion that Salmon suffered a heart attack and died.

An autopsy was performed by Dr. Holt, a pathologist, and present at this time was Dr. Rice, the employer's chief surgeon. Dr. Holt concluded, after the autopsy and the final microscopic examination of the tissue, that death had resulted from acute ischemic myocardial necrosis due to advanced coronary arteriosclerosis. Dr. Rice, who qualified as a competent heart man, concurred in the opinion of Dr. Holt and explained that arteriosclerosis is a gradually increasing disease which affects the blood vessels, particularly the arteries, which become more rigid as the disease progresses until it finally occludes or nearly closes the lumen (the inside blood channel). To the same effect was the testimony of Dr. Wertheimer and Dr. Hodges, also pathologists. All believed death was instantaneous, that is, that he had the seizure before he fell—all, with the exception of Dr. Holt. Dr. Holt was of opinion that Salmon's heart condition was not serious enough to cause his death if it had not occurred on the light standard and he had not been suspended for about thirty minutes after the seizure.

We think the referee and the board had ample probative testimony upon which to base their conclusion that there was no accident and that a pre-existing bad heart condition was the sole and proximate cause of Salmon's death.

Appellant argues, however, under the authority of Hollinsworth v. Traubaugh, Ky., 268 S.W.2d 431; Ellis v. Litteral, 296 Ky. 287, 176 S.W.2d 883; and General Refractories Co. v. Collins, Ky., 272 S.W. 2d 471, where death resulted soon after an injury to an able-bodied man, a presumption arises that death was caused by injury.

This rule, of course, presupposes that an accident and injury occurred before the death. In this case we think the board properly concluded that Salmon fell because he had a heart attack. A similar contention was made in the above cited General Refractories Co. v. Collins, Ky., 272 S.W. 2d 471, 473, wherein it was said:

"Appellee argues that where death follows soon after the injury of an able-bodied man, a presumption arises that death was caused by the injury in the absence of other than conjectural testimony to the contrary, citing Ellis v. Litteral, 296 Ky. 287, 176 S.W.2d 883. We admit there is such a presumption but in the instant case it was overcome by the competent testimony of Dr. Miller, which was not conjectural but which possessed probative value."

In the instant case, the probative testimony of several of the doctors to the effect that Salmon died of a heart attack was not conjectural.

 We have often held that if there is any competent evidence of probative value to support the finding of a board, the courts may not disturb it. Humble v. Liggett & Myers Tobacco Co., Ky., 239 S.W.2d 469; General Refractories Co. v. Collins, Ky., 272 S.W.2d 471.

It is suggested by appellant's brief that Salmon's heart attack while he was atop a forty-foot pole resulted from unusual exertion. We think the proof shows that the replacement of light bulbs on these standards was a part of his routine work in connection with his job and that the exertion was no more than that usually required in the customary discharge of his work. However, in a number of cases we have held that a heart attack brought on by strain or exertion is not compensable. Wallins Creek Collieries Co. v. Williams, 211 Ky. 200, 277 S.W. 234; Aden Mining Co. v. Hall, 252 Ky. 168, 66 S.W.2d 41; Fannin v. American Rolling Mill Co., 284 Ky. 188, 144 S.W.2d 228; Rue v. Kentucky Stone Co., 313 Ky. 568, 232 S.W.2d 843; Ratliff v. Cubbage, 314 Ky. 716, 236 S.W. 2d 944; H. Smith Coal Co. v. Marshall, Ky., 243 S.W.2d 40.

Judgment affirmed.